Argued September 13, affirmed October 18, 1977

# COMMUNITY BANK, *Respondent,*
## *v.*
# VASSIL, *Appellant.*
## (TC 403-345, SC 24828)
### 570 P2d 66

Diane Spies, of Connal & Spies, P.C., Portland, argued the cause and filed a brief for appellant.

Ferris F. Boothe, of Black, Kendall, Tremaine, Boothe & Higgins, Portland, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and Tongue and Bryson, Justices, and Gillette, Justice Pro Tempore.

TONGUE, J.

**TONGUE, J.**

This is an action to recover on a check drawn by defendant, George Vassil, to the order of R.L. Jones Co. The check, in the sum of $9,490, was deposited in the Jones' account with plaintiff, Community Bank. Plaintiff, as the holder of the check, brought this action after defendant stopped payment on the check. The case was tried to the court, sitting without a jury. Defendant appeals from a judgment in favor of plaintiff.

Robert Jones, doing business as R.L. Jones Motor Company, was a used car wholesaler and retailer and had his checking account with Community Bank. Jones' operations were financed by "flooring" his inventory of cars with various lenders, including both the bank and the defendant. The lenders would advance money to Jones in return for certificates of title to cars in his inventory. As the cars were sold, Jones would repay the advances and the certificates of title would be returned. The lenders would then floor other cars by receiving new titles and advancing more funds.

During 1973, flooring transactions between Jones and defendant took place on an almost daily basis. Jones' indebtedness to defendant during this period ranged between $25,000 and $30,000. Defendant's flooring arrangement with Jones was terminable at will.

On December 13, 1973, defendant loaned Jones $20,250 and Jones repaid some prior loans, giving defendant a check for $21,765. On Friday, December 14, defendant loaned Jones $9,490 and Jones gave defendant a check for $10,930 in repayment for prior loans. The following Monday, December 17, defendant learned that Jones' December 13 check for $21,765 was being returned unpaid by Community Bank, and that Jones' December 14 check for $10,930 would probably also be returned. Defendant, learning that

[ 141 ]

his December 14 check to Jones in the amount of $9,490 had not yet been paid by his own bank, ordered payment stopped.

Community Bank had already paid funds out of Jones' account against his deposit of defendant's check. The basic dispute was whether, as against Community Bank, defendant was justified in stopping payment on the $9,490 check.

Prior to December 17, 1973, Community Bank had, for a long period, permitted Jones to maintain his bank account in a "potential overdraft" condition. That is, each morning Jones would call the Bank to determine the amount needed to cover his checks which had been presented for payment on the previous day. Later in the day he would make a deposit in the required amount. Typically the deposit would consist of a number of different checks to Jones. The Bank would pay Jones' checks on the strength of this deposit, although it consisted of checks which were yet to be collected.

On December 17 Community Bank decided to return all of Jones' checks which were presented for payment against uncollected funds in order to discover the true status of his account and to determine whether he was engaged in a "check-kiting" scheme. This decision prompted several of Jones' lenders to stop payment on checks they had given him. A number of lawsuits followed, some of which have already been heard and decided by this court. The background of the Bank's December 17 decision has been described in our opinions in those cases and need not be repeated. *See Community Bank v. Jones,* 278 Or 647, 566 P2d 470 (1977); *Community Bank v. Ell,* 278 Or 417, 564 P2d 685, *rehearing den.,* 279 Or 245, 566 P2d 903 (1977). *See also Community Bank v. U.S. Bank,* 276 Or 471, 555 P2d 435 (1976).

In the present case defendant raised a number of affirmative defenses. Community Bank responded by

claiming the status of a holder in due course. The trial court found that the bank had taken the check for value, in good faith, and without notice of any defense or claim to the check and without notice of defendant's financing of Jones. It concluded that the Bank was a holder in due course and that, in any event, there were no defenses to the check at the time the Bank became a holder. Defendant appeals from the resulting judgment for Community Bank.

Defendant's first assignment of error is that the trial court erred in refusing to hold that Community Bank was collaterally estopped by an adverse decision of the Multnomah County Circuit Court on similar issues in the case of *Community Bank v. Ell, supra,* to assert its status as a holder in due course and to contend that one of the affirmative defenses was unavailable. After the briefs in the present case were filed, but before argument, we decided the appeal in that case. *Community Bank v. Ell, supra.* We held there that the judgment in favor of defendant Ell must be reversed because of an error in submission to the jury of issues bearing on Community Bank's status as a holder in due course. As a consequence, we ordered a new trial.

■ We need not address the issues raised by defendant's first assignment of error in the present case. Even assuming that the issues in the *Ell* case were the same as those in this case (a position which Community Bank vigorously opposes and which we adopt only for purposes of this discussion), there is at present no judgment in the *Ell* case which can operate as an estoppel against the Bank. Upon reversal of the judgment in that case and its remand for a new trial, it ceased to have any potential res judicata or collateral estoppel effect. Restatement of Judgments 163, comment *d* to § 41 (1942).

■ Most courts which have considered the matter have held that when a judgment which has been given res judicata effect in another case is later reversed on

appeal, that reversal will be taken into account and given effect upon an appeal of the case in which the prior judgment was relied upon. Even though it cannot be held that the trial court erred in giving res judicata effect to the original judgment before its reversal, appellate courts will take judicial notice of the later reversal in order to eliminate the need for additional proceedings which would accomplish the same result. We agree that this is the proper procedure to be followed in such cases. *See, e.g., Butler v. Eaton,* 141 US 240, 11 S Ct 985, 35 L ed 713 (1891); *E.I. Dupont de Nemours & Co. v. Richmond Guano Co.,* 297 F 580 (4th Cir 1924); *Ransom v. City of Pierre,* 101 F 665 (8th Cir 1900); *Mutual Life Ins. Co. v. Lipp,* 28 F2d 863 (9th Cir 1928); *Sylvester v. J.I. Case Threshing Machine Co.,* 21 Colo App 464, 122 P 62 (1912); *McDonald v. McDonald,* 53 Wis 2d 371, 192 NW2d 903 (1972) (approving rule but finding it inapplicable). *Contra, Bobb v. Taylor,* 193 SW 800 (Mo 1917). *See generally* Annot., Judgment as Res Judicata Pending Appeal or Motion for a New Trial, or During the Time Allowed Therefor, 9 ALR2d 984, 1014-16, § 10 (1950); 2 Freeman on Judgements 1523 (5th ed Tuttle 1925).

It is true that the judgment in Ell's favor was still in effect at the time the trial court decided the present case. Had the trial court in this case given collateral estoppel effect to the circuit court judgment in *Ell* we would have reversed that holding because of our reversal in *Ell.* Any error by the trial court in this respect cannot, therefore, be prejudicial under the present circumstances.

■ Defendant also contends that the trial court was required, as a matter of law, to hold that the Bank was estopped by its own prior actions to assert its right to payment of the check. This issue was raised by defendant's second and third affirmative defenses. The trial court's findings of fact on these issues were that defendant had failed to establish the allegations supporting those defenses.

Defendant alleged that the Bank agreed with Jones to lend him money by permitting him to cover his daily potential overdrafts with checks drawn by Vassil and others, which checks were to be obtained "by exchanging checks in like amount" drawn by Jones on his account with the Bank. Defendant also alleged that this arrangement was "intended to solicit the participation of third parties such as" defendant. In effect, defendant alleged that Community Bank had invited him, as one of Jones' lenders, to participate with Jones in "kiting" his checks.

Although the evidence clearly established that the Bank had agreed to permit Jones to cover his potential overdrafts each day, the trial court was not obliged to find either that the agreement included an understanding that the deposits would be obtained by "exchanging" checks with defendant and others or that the Bank's arrangement with Jones was intended to "solicit the participation" of third parties. There was no direct evidence to support either allegation and the trial court was not bound to draw either inference from the evidence before it.

Defendant testified that he was familiar with Jones' method of banking and that he would not have continued to loan him money had he not relied on the Bank's continuing forbearance toward Jones. On the evidence before it, however, the trial court was not required to find that the Bank was aware of defendant's knowledge and reliance or that the Bank ever intended or knew that its arrangement with Jones would be relied on by Jones' other creditors.

We do not retry the facts after they have been found by the court, sitting without a jury, in an action at law. If the trial court's findings would be permissible if made by a jury they are binding on us. *See* ORS 17.415 and Oregon Constitution, Art VII (Amended), § 3. It was not error to find that defendant had not estab-

lished the allegations of his affirmative defenses of estoppel.

The judgment of the trial court is affirmed.