Argued and submitted March 10, reversed May 19, reconsideration denied July 2, petition for review denied July 17, 1980 (289 Or 373)

RON TONKIN GRAN TURISMO, INC.,
*Respondent,*

*v.*

WAKEHOUSE MOTORS, INC., et al,
*Appellants,*

*v.*

TONKIN,
*Third Party Defendant.*

(No. A7609-13461, CA 14531)

611 P2d 658

Miles Sweeney, Portland, argued the cause for appellants. With him on the briefs were John R. Gilbertson, David J. Sweeney, Gilbertson, Brownstein, Sweeney, Kerr and Grim, Portland.

Roger Tilbury, Portland, argued the cause for respondent, Ron Tonkin Gran Turismo, Inc. With him on the brief was Reiter, Bricker, Zakovics & Querin, Haessler, Stamer and Tilbury, Portland.

Before Gillette, Presiding Judge, Schwab, Chief Judge, and Campbell, Judge.

GILLETTE, P. J.

## GILLETTE, P. J.

Plaintiff brought this action alleging that defendant induced Fiat Distributors, Inc., (Fiat) the United States distributor of Fiat, not to grant plaintiff a franchise to sell Fiat automobiles. The complaint alleged interference with both an actual contract and a prospective contract. The trial court, sitting without a jury, made specific findings of fact and conclusions of law. It entered judgment for the plaintiff for $222,615 on the prospective contract count only, finding that the defendant intentionally interfered with a contemplated relationship between plaintiff and Fiat for improper purposes. Defendant appeals. We reverse.

Defendant Wakehouse is the president of Wakehouse Motors Inc., the sole dealer of Fiat automobiles, parts and service in Portland. During 1974, plaintiff, also a Portland car dealer, discussed with Fiat personnel the possibility of entering into a written franchise agreement whereby plaintiff would sell Fiat automobiles to the public and provide parts and service to prospective purchasers. A tentative agreement was reached between plaintiff and the regional representatives of Fiat. Plaintiff, after taking certain steps, was assured by the regional representatives that it would be granted the franchise. Plaintiff submitted a written order to Fiat for automobiles and parts and a bank check for the parts.

The defendants were informed by one of Fiat's regional representations in October, 1974, that Fiat was looking for an additional dealer in the Portland area because of the low sales percentage for Fiats in Portland as compared with other areas of the country. They were also told of plaintiff's application. During that same month, Wakehouse flew to New Jersey to meet with the executive officers of Fiat distribution in the United States. Thereafter, a regional representative was told by Fiat headquarters to delay processing of plaintiff's application for a franchise. Wakehouse was given a 90 day trial period during which he was to

[201]

meet certain sales quotas. Fiat then extended that period another 90 days. Plaintiff was told of the moratorium on processing his application and its check was returned to it. At some point in 1975, Fiat decided not to pursue the appointment of an additional dealer in Portland.

In its complaint, plaintiff alleged that defendants made personal contact with Fiat in order to dissuade Fiat from entering into a franchise agreement with plaintiff. Plaintiff claimed that defendants, concerned with the effect the proposed franchise would have on their profits, maliciously and intentionally sought to prevent such franchise from being granted. Plaintiff contends that, in seeking this end, defendants employed improper means and/or acted in illegal restraint of trade by:

"1) Attempting to monopolize the sale of Fiat automobiles in the City of Portland;

"2) Attempting to monopolize the sale of Fiat parts in the City of Portland;

"3) Monopolizing the sale of Fiat automobiles in the City of Portland;

"4) Pursuading Fiat Distributors to cancel its plans to grant plaintiff a franchise agreement so that defendants could maintain a high profit margin for each sale of Fiat automobiles;

"5) Joining with other Fiat automobile dealers to oppose and boycott the appointment of new dealers in the Portland area;

"6) Attempting to and succeeding in restricting the supply of Fiat automobiles available for sale to the public in the City of Portland;

"7) Attempting to and succeeding in restricting the supply of Fiat parts available for sale to the public in the City of Portland;

"8) Restraining trade in the sale of Fiat automobiles and parts in the City of Portland."

The trial court found that the defendants intentionally contacted the executive officers of Fiat to dissuade them from granting the written franchise to plaintiff; that, as a result, Fiat refused to grant plaintiff the

franchise; and that the defendants' purpose in personally contacting Fiat was to maintain their position as the sole dealer of Fiat cars, parts and services in Portland and, thus, to assure that their pricing policies would remain free of any competitive forces. On that basis, the court concluded that the defendants' intentional interference with the prospective contract between plaintiff and Fiat was motivated by improper and illegal purposes and granted judgment for plaintiff.

Defendants raise numerous assignments of error on appeal. In view of the disposition we make of this case, we reach only the first, which concerns the applicability of res judicata and collateral estoppel.

Defendants claim that this action is barred by principles of res judicata and/or collateral estoppel by virtue of a previous lawsuit brought by plaintiff in Federal District Court in Oregon. That action was an anti-trust suit brought by plaintiff against Fiat Distributors and defendant, Wakehouse Motors.

Plaintiff, in its federal action, alleged that Fiat and Wakehouse conspired to act in restraint of trade, attempted to and did monopolize the trade of Fiat automobiles in the Portland area, and attempted to force on plaintiff an illegal tying arrangement,[1] all in violation of the Sherman Anti-Trust Act, 15 U.S.C. §§ 1-2, and the Clayton Act, 15 U.S.C. § 12 *et seq.* Plaintiff claimed that the defendants, acting together, sought to and in some instances did:

"a) Deprive and block plaintiff from obtaining a supply of Fiat automobiles and parts;

"b) Eliminate, preclude and restrict price competition in the metropolitan Portland area for the purchase of Fiat vehicles and parts;

"c) Eliminate competition of other automobiles formerly sold by plaintiff (Saab and Honda) as a

---

[1] The illegal tying arrangement claim was against Fiat alone, plaintiff alleging that Fiat said plaintiff would be granted a Fiat dealership if it ended its dealings with Saab and Honda.

precondition to the sale of Fiat automobiles by means of tie-in restrictions;

"d) Erect, establish and maintain a boycott against plaintiff."

After making specific findings and conclusions of law, a federal magistrate recommended that the district court grant summary judgment for defendants. The magistrate found that the defendants' actions did not constitute a monopoly of the relevant product market, an attempt to monopolize that market or a conspiracy to monopolize. The magistrate concluded that the refusal of Fiat to sell to plaintiff because of their understanding with Wakehouse did not amount to an illegal or unreasonable restraint of trade but rather was a proper exclusive dealership under the anti-trust laws. Additionally, the magistrate found that plaintiff failed to establish the existence of an illegal tying arrangement or price fixing. The magistrate's decision was affirmed by a district court judge after a de novo review. That decision is currently under appeal to the Ninth Circuit Court of Appeals.

Res judicata applies not only to every claim included in the pleadings but also to every claim which could have been alleged under the same "aggregate of operative facts which compose a single occasion for judicial relief." *Taylor v. Baker,* 279 Or 139, 144, 566 P2d 884 (1977); *Dean v. Exotic Veneers Inc.,* 271 Or 188, 194, 531 P2d 266 (1975). Collateral estoppel applies "only to material issues or determinative facts which were actually or necessarily adjudicated in the prior action." *Jones v. Flannigan,* 270 Or 121, 124, 526 P2d 543 (1974).

We turn first to the claim that this suit is barred by principles of res judicata. There is no question that the claim before us now arises from the same set of operative facts as the federal claim. Plaintiff would normally have been expected to raise both claims in the same lawsuit. However, the claim of interference with a prospective contract or business relationship is a

[204]

claim arising under state law and a question arises as to whether plaintiff could have pursued it in federal court.

The state claim has no independent federal basis. There is no diversity of citizenship between the parties. However, the federal court did have the power to decide the matter under the doctrine of pendent jurisdiction. Pendent jurisdiction, "in the sense of judicial power," exists whenever there is a federal claim and a state claim which constitute "but one constitutional case." *Mine Workers v. Gibbs,* 383 US 715, 725, 86 S Ct 1130, 16 L Ed 218 (1966). The requirements of pendent jurisdiction are that the federal claim must have substance "sufficient to confer subject matter jurisdiction on the court" and the state and federal claims "must derive from a common nucleus of operative fact" so that a plaintiff would ordinarily have been "expected to try them all in one judicial proceeding." *Id.,* at 725. *See also Klaus v. Hi-Shear Corporation,* 528 F 2d 225 (9th Cir 1975). Plaintiff's claim fits within these parameters.

A difficulty arises, however, in determining whether or not the federal court would have exercised its discretion to hear the state claim. Pendent jurisdiction is always a matter of discretion and not a right of the parties. *Mine Workers v. Gibbs, supra,* 383 U.S. at 726. In this case, the federal claim was decided on a motion for summary judgment before trial on the merits. The federal courts have consistently held that, where the federal claim is dismissed on a motion for summary judgment before there has been a substantial expenditure of the court's time or energy on the case, a sound exercise of discretion requires dismissal of the state claims as well without prejudice to plaintiff's right to litigate them in the proper state forum. *See, e.g., Hodge v. Mountain States Tel. & Tel. Co.,* 555 F2d 254 (9th Cir 1977); *Ouzts v. Maryland National Insurance Company,* 470 F2d 790 (9th Cir 1972); *Wham-O Mfg. Co., v. Paradise Manufacturing Co.,*

327 F2d 748 (9th Cir 1964); *see generally, Annot.,* 5 ALR3d 1040 (1966); Wright, Miller & Cooper, 13 Federal Practice and Procedure § 3567 (1975). As the Supreme Court stated in *Gibbs:*

> "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Mine Workers v. Gibbs, supra,* 383 U.S. at 726.

Recently, a California Appeals Court faced the issue before us now. In *Merry v. Coast Community College Dist.,* 97 Cal App 3d 214, 158 Cal Rptr 603 (1979), the court held that summary judgment for the defendants in a prior federal court action did not bar a subsequent state claim on a related issue that could have been raised in federal court because, once the federal claim was dismissed, it was clear that the federal court would have declined to exercise jurisdiction over the state claim. The court stated:

> "A given claim may find support in theories or grounds arising from both state and federal law. When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground. If however, the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should be held not precluded." *Id.,* at _____ , 158 Cal Rptr at 613 (quoting from Restatement of Judgments 2d Ten. Draft No. 5, § 61.1, Comment "e").

We agree with the rationale advanced by the California court and hold that the prior federal court action did not bar, on res judicata grounds, plaintiff's right to maintain the present action. However, even though res judicata is not applicable, the doctrine of

collateral estoppel may bar this suit if the issues raised here were actually or necessarily decided by the federal court.

Before comparing the issues in the two suits, there are some preliminary matters we must consider. Plaintiff argues that the burden of proof in the federal action was higher than that required to prove the state claim and that collateral estoppel is thus not applicable. It is true that a difference in the standard of proof between the two claims affects the applicability of collateral estoppel.[2] However, there is no such difference here. The standard for both the state claim for intentional interference with a prospective contract and the federal anti-trust claim is the ordinary civil standard of a preponderance of the evidence. *Ramsey v. Mine Workers,* 401 US 302, 91 S Ct 658, 28 L Ed 2d 64 (1971).

Respondent's second argument is that collateral estoppel cannot be a bar to the state suit because the federal action is currently being appealed and the Ninth Circuit Court of Appeals has not yet rendered a decision in the case. The pendency of an appeal does, in some jurisdictions, prevent a judgment from operating as res judicata or collateral estoppel. *See generally, Annot.,* 9 ALR2d 984 (1950); 1B Moore's Federal Practice § 0.416(3) (1975). The law in Oregon is to the contrary. *Jaloff v. United Auto Indemnity Exch.,* 121 Or 187, 253 Pac 883 (1927); *Community Bank v. Vassil,* 280 Or 139, 144, 570 P2d 66 (1977).[3] The authorities agree, however, that the rule to be applied concerning whether or not the pendency of an appeal prevents a judgment from operating as a bar is the rule of the jurisdiction where the original judgment

---

[2] *See In re Robert Neil Gygi,* 273 Or 443, 541 P2d 1392 (1975).

[3] In *Community Bank v. Vassil,* 280 Or 139, 144, 570 P2d 66 (1977), the issue was the effect of reversal on appeal of a judgment on a case which relied on that original judgment for collateral estoppel purposes. In deciding that issue, the court stated that it was not error for the trial court to give effect to the original judgment which was on appeal at the time the second suit was found to be barred.

was rendered. 1B Moore's Federal Practice § 0.416(3), 2255-2256 (1975); *Annot.,* 9 ALR2d 984 (1950); 2 Freeman on Judgments 1529 (5th ed 1925). The rule in federal court is the same as that in Oregon. *See* 1B Moore's Federal Practice, § 0.416(3), 2252- 2255; *see also American Heritage Life Ins. Co. v. Heritage Life Ins. Co.,* 494 F2d 3 (5th Cir 1974); *United States v. Abatti,* 463 F Supp 596 (SD Cal 1978); *Performance Plus Fund, Ltd. v. Winfield & Co. Inc.,* 443 F Supp 1188 (ND Cal 1977).

We turn now to an examination of the plaintiff's claim to determine if some or all of the material issues in its state court claim were decided by the judgment of the federal court.

The elements of the tort of intentional interference with a prospective business relationship or contract are:

> "(1) The defendant intentionally interfered with the proposed relationship;
> "(2) He interfered either with an improper motive or by using improper means; and
> "(3) As a result the plaintiff was damaged beyond just the fact of interference itself."

*Straube v. Larson,* 287 Or 357, 360, 600 P2d 371 (1979); *Top Service v. Allstate,* 283 Or 201, 209, 582 P2d 1365 (1978).

In its complaint, plaintiff relies on "improper means" to establish its claim. These means, for the most part, amount to allegations of monopoly, attempted monopoly, boycott and illegal restraint of trade. The basis for these contentions is the fact that the defendant is the sole dealer of Fiat automobiles in Portland. As previously discussed, the federal court clearly decided these issues in defendants' favor and found the defendants' position to be that of a proper exclusive dealership under the anti-trust laws.

There is, however, one allegation that was not decided by the federal court: Plaintiff alleged that

defendants, in seeking to interfere with the prospective contract, persuaded Fiat to cancel its plans to grant plaintiff a franchise agreement so that defendants could maintain a high profit margin for each sale of a Fiat automobile. Whether the act of going to Fiat headquarters to persuade them not to grant a franchise to plaintiff amounts to "illegal means" is questionable.[4] Nevertheless, it is an issue on which the plaintiff was entitled to proceed to trial.[5] On that basis, we turn to the trial court's findings.

The trial judge found as fact that

"* * * the defendant, Wakehouse, acting for himself and for Wakehouse Motors, Inc., did intentionally make personal contact with executive officers of Fiat Distributors, Inc. to dissuade Fiat Distributors, Inc. from granting the written franchise to plaintiff. * * * [T]hereafter Fiat Distributors, Inc. did refuse to grant the written franchise to plaintiff and did return to plaintiff the plaintiff's bank check.

"That Wakehouse's purposes in making personal contact with Fiat Distributors, Inc. were to maintain the position of Wakehouse Motors, Inc. as the only dealer in Portland, Oregon for Fiat cars, parts, and service, and by so doing to assure that Wakehouse Motors, Inc.'s retail price fixing policies for Fiat cars, parts and service would be and remain free from any competitive force in Portland, Oregon.

" * * *

"That Fiat Distributors, Inc. would have granted a written franchise to plaintiff if the defendant, Wakehouse, had not importuned against it."

---

[4] "[Improper means] may be wrongful by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of trade or profession." *Top Service Body Shop v. Allstate Ins. Co.,* 283 Or 201, 209-210, 582 P2d 1365 (1978).

[5] Taking this allegation *i.e.,* the act of going to Fiat headquarters with the purpose of preventing plaintiff from obtaining a franchise, in its entirety, it may be argued that the federal court decided the issue. The defendants can maintain certain prices because of their exclusive dealership—this is not illegal under the federal court's judgment. Moreover, the federal court found that plaintiff failed to sustain its claim of price fixing. In all fairness to plaintiff, however, the better conclusion is that the issue of interference with a prospective relation by persuading Fiat to act in a given manner was not fully focused upon, litigated or decided.

The trial judge then concluded, as a matter of law, that

"Defendants' intentional interference with the prospective contract between plaintiff and Fiat Distributors, Inc. was motivated by improper and illegal purposes.

"Defendants are liable to plaintiff for damages for their interference with plaintiff's prospective contract with Fiat Distributors, Inc.
"* * *"

While the plaintiff focused on the use of *illegal means* in its complaint, the trial court based its judgment solely on the presence of *improper motives.* Motive was clearly not an issue in the federal suit. Assuming the claim of malice in plaintiff's complaint in state court is sufficient to allege improper motive so that it was an issue in the present case, we conclude that the trial court erred in finding that the defendant's motive for interfering in the proposed relationship between Fiat and plaintiff was improper.

The court found that the defendants' purpose in contacting Fiat was to maintain their position as the sole dealer of Fiat cars, parts and service in Portland and, by so doing, to insure that their price fixing policies would remain free of any competitive force in Portland. This is not an improper purpose. The defendants' exclusive dealership is not illegal in itself, and the trial court did not find that unlawful means were employed to preserve it.

In any event, defendants' actions are privileged as a competitor. *Jolma v. Steinbock,* 40 Or App 657, 496 P2d 980 (1979). Both they and the plaintiff are car dealers in the same geographic area and are in competition not only for buyers but also suppliers. There was no existing contract between plaintiff and Fiat but only the prospect of one.[6] Therefore, even if the

---

[6] Plaintiff claims there was an existing contract but the trial court ruled against plaintiff on this point and plaintiff does not appeal from this portion of the court's ruling.

[210]

defendants intentionally persuaded Fiat not to grant plaintiff the franchise, they did not improperly interfere in the relationship. According to the Restatement of Torts:

"(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

"(a) the relation concerns a matter involved in the competition between the actor and the other and

"(b) the actor does not employ wrongful means and

"(c) his action does not create or continue an unlawful restraint of trade and

"(d) his purpose is at least in part to advance his interest in competing with the other."

4 Restatement of Torts 2d, § 768 (1979).

Considering these criteria, defendants' conduct does not constitute improper interference. The subject, obtaining a franchise from Fiat, is a matter of competition between the parties. The trial court did not find the defendants employed any wrongful means and the federal court judgment established that their behavior did not constitute an unlawful restraint of trade. Finally, the defendants' purpose (motive) was, at least in part, to maintain their competitive position as the sole dealer of Fiats in Portland; this was the trial court's finding and plaintiff's own allegation in its complaint.[7]

"If the business diverted by the actor relates to his competition with his competitor, his conduct will ordinarily be directed, at least in part, to the improvement of his position in the competition." 4 Restatement of Torts 2d § 768 comment g.

There was no finding by the trial court, nor does plaintiff claim, that the defendants' conduct was "directed solely to the satisfaction of his spite or ill will

---

[7] Plaintiff alleged that defendants acted out of concern for the effect that granting a Fiat franchise to plaintiff would have on their profits. This is not an improper motive.

and not at all to the advancement of his competitive interests over the person harmed." 4 Restatement of Torts 2d § 768, comment g.

Based upon the foregoing analysis, we conclude that the judgment for plaintiff must be reversed, inasmuch as it has failed to establish a necessary element of its claim. The trial court's order was based solely on a finding of improper purpose. As a matter of law, such a purpose—to remain the sole dealer of Fiat cars in Portland—is not improper. Given the absence of any improper motive and the failure to establish the use of illegal means, the defendants' interference was privileged.[8]

Reversed.

---

[8] Respondent claims that the trial court found that defendants violated Oregon's anti-trust laws, ORS ch 646 and thus defendants' behavior is not privileged. While there is some indication in the record that the trial court may have believed that defendants' behavior was illegal, the court made no specific findings of illegal means. The court's decision was based solely on illegal motives. Where the court has chosen to make specific findings, we cannot go beyond those findings to sustain its decision. *Brisco v. Pittman,* 268 Or 604, 607, 522 P2d 886 (1974).