Argued and submitted June 1, reversed and remanded in part; otherwise affirmed
September 27, 2000

David SHERWOOD,
Noralee Sherwood and David Sherwood,
as Guardian Ad Litem of Nathan D. Sherwood, a Minor,
*Appellants,*

*v.*

OREGON DEPARTMENT OF TRANSPORTATION,
*Respondent.*

(C950628CV; CA A98350)

11 P3d 664

Ben Shafton argued the cause for appellants. With him on the brief was Morse & Bratt.

Jas. Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

**HASELTON, J.**

Plaintiffs Noralee, David, and Nathan Sherwood[1] appeal from a judgment in favor of defendant Oregon Department of Transportation (ODOT), in a tort action arising out of an automobile accident. Plaintiffs assign error to the trial court's grant of ODOT's motion for summary judgment and argue, specifically, that the court erred in holding that: (1) Noralee's negligence claim was barred by both issue preclusion and claim preclusion; (2) David's loss of consortium claim was barred by issue preclusion; and (3) Nathan's claim for negligent infliction of emotional distress was insufficient as a matter of law. We conclude that the trial court erred in dismissing David's loss of consortium claim and Nathan's claim for emotional distress damages, *see Saechao v. Matsakoun*, 78 Or App 340, 717 P2d 165, *rev dismissed* 302 Or 155 (1986), but correctly granted summary judgment against Noralee's claims. Accordingly, we reverse and remand David's loss of consortium claim and Nathan's claim for negligent infliction of emotional distress, but otherwise affirm.

For purposes of appeal, the following facts are undisputed. On November 9, 1993, Noralee and Nathan were driving on Canyon Road in Washington County. The Sherwoods' car struck a curb barrier and collided with a vehicle driven by Maria Mitchell. Noralee, Nathan, and Mitchell were all injured. On May 31, 1995, plaintiffs filed this action in Washington County Circuit Court alleging that ODOT had been negligent in its construction and placement of the raised curb that Noralee struck before colliding with Mitchell, as well as in failing to warn drivers of the curb.[2] Count One of the complaint sought damages for Noralee's injuries. Count 2 sought damages for Nathan's physical injuries. Count 3, which was captioned "Negligent Infliction of Emotional Distress," alleged, in part:

"3.2    As a direct and proximate result of the negligence of Defendant [ODOT], NATHAN D. SHERWOOD, a minor,

---

[1] "Plaintiffs" refers to the Sherwoods collectively. Otherwise, for clarity, the individual family members are referred to by their first names.

[2] Plaintiffs had previously, on January 25, 1994, given ODOT timely notice of claims under the Oregon Tort Claims Act. *See* ORS 30.275.

witnessed the injuries suffered by his mother, NORALEE SHERWOOD, thereby causing him severe emotional distress."

"3.3    As a direct and proximate result of the emotional distress referenced above, NATHAN D. SHERWOOD, a minor, has been damaged in an amount not less than ONE HUNDRED THOUSAND DOLLARS AND NO/100s ($100,000)."

Finally, Count 4 sought loss of consortium damages for David.

On November 8, 1995, Mitchell filed suit against Noralee in Multnomah County Circuit Court but did not name ODOT as a defendant. Mitchell sought damages totaling $2,171,053.95[3]—exceeding the coverage limits of the Sherwoods' liability insurance policy with Safeco Insurance Company (Safeco). Safeco retained attorney Larry Brisbee as counsel to defend Mitchell's claims against Noralee. There is no indication in the record of any reservation of rights. In January 1996, Brisbee filed an Answer and Third Party Complaint, which sought contribution against ODOT based on ODOT's alleged negligence in constructing and placing the curb barrier and in failing to adequately warn drivers about the curb. Those allegations of comparative fault were similar to the allegations of negligence against ODOT in the Washington County action.

In July 1996, Mitchell's claims against Noralee settled, leaving the third-party contribution claim to be litigated. ODOT then moved for summary judgment against Noralee's contribution claim on the basis that, because Mitchell (*not* Noralee) had never served the state with a tort claim notice pursuant to ORS 30.275, ODOT could not be liable to Noralee for contribution. The court denied the motion, and the contribution action between Noralee and ODOT proceeded to trial. The Multnomah County jury returned a verdict finding Noralee 55 percent responsible for Mitchell's injuries and ODOT 45 percent responsible, and the trial court entered judgment accordingly.

---

[3] Specifically, Mitchell sought medical expenses of $11,053.95, economic damages for lost income and loss of future earning capacity of $960,000, and noneconomic damages of $1.2 million.

ODOT appealed the Multnomah County judgment to this court and argued that, because Mitchell had not given ODOT tort claim notice, contribution was precluded as a matter of law. *Mitchell v. Sherwood,* 161 Or App 376, 985 P2d 870, *rev den* 329 Or 479 (1999). We ultimately agreed, and remanded the case to the trial court for entry of judgment in favor of ODOT. *Id.* at 383.

In March 1997, following the jury verdict in the Multnomah County contribution action but before we reversed that judgment, ODOT moved in the Washington County litigation for summary disposition of plaintiffs' pending tort claims. Specifically, ODOT argued that: (1) Noralee's personal injury claim (Count 1) was precluded under the doctrines of claim and issue preclusion; (2) David's loss of consortium claim (Count 4) was precluded under the doctrine of issue preclusion; (3) ODOT was entitled to partial summary judgment on Nathan's personal injury claim (Count 2) on the issue of ODOT's and Noralee's proportional fault in causing the ensuing accident; and (4) Nathan had failed to state a claim for negligent infliction of emotional distress (Count 3).

In response, plaintiffs raised three main arguments. First, plaintiffs asserted that the Multnomah County judgment should not be given any claim- or issue-preclusive effect because Noralee was merely a "nominal" party to the Multnomah County litigation in that Safeco, not Noralee, was the real party in interest. In a related sense, they asserted that Noralee did not have a "full and fair opportunity" to litigate the issue of her negligence in the Multnomah County litigation because Safeco controlled that litigation, and, thus, it would be "unfair" to give that judgment any preclusive effect. Second, plaintiffs argued, in passing, that the Multnomah County judgment could be reversed on appeal and that the effect of such a reversal would be to obviate any preclusive effect of the possibly vacated judgment. Finally, Nathan argued that his emotional distress claim was actionable under the "impact rule" articulated in *Saechao.*

In April 1997, the trial court allowed partial summary judgment dismissing Noralee's and David's claims, as well as Nathan's claim for negligent infliction of emotional distress. The court further determined, with respect to

Nathan's personal injury claim, that issue preclusion applied to the Multnomah County jury's allocation of fault between Noralee and ODOT. Nathan subsequently settled his personal injury claim with ODOT.[4]

On appeal, plaintiffs raise two assignments of error. First, they assert, the trial court erred in concluding that issue preclusion and claim preclusion barred Noralee's personal injury claim and David's claim for loss of consortium. Second, the court erroneously failed to apply the "impact rule" of *Saechao v. Matsakoun* in dismissing Nathan's emotional distress claim. We address each assignment in turn.

■　　In challenging the trial court's application of issue preclusion and claim preclusion, Noralee and David essentially reiterate the arguments they made in opposing summary judgment. In addition, they raise a bevy of new, and substantively different, contentions not made to the trial court. Because the latter were not preserved, *see* ORAP 5.45(7); *J. Arlie Bryant, Inc. v. Columbia River Gorge Comm.*, 132 Or App 565, 568, 889 P2d 383, *rev den* 321 Or 47 (1995) (describing "comity" and "anti-sand-bagging" rationales for the preservation requirement), we consider only the former.[5]

■　　We begin with issue preclusion. Noralee and David argue that the jury's apportionment of comparative fault in the now-vacated *Mitchell* contribution judgment cannot be the basis for issue preclusion in this case. Specifically, they argue that our holding in *Mitchell* establishes that the issue of comparative fault should never have been submitted to the jury and, thus, any determination of comparative fault not only was not "essential to a final judgment on the merits in the prior proceeding," *Nelson v. Emerald People's Utility*

---

[4] Given that settlement, the only issue on appeal pertaining to Nathan is the legal sufficiency of his claim for negligent infliction of emotional distress.

[5] In particular, plaintiffs now argue, for the first time, that: (1) under ORCP 22 C there was no procedural device by which Noralee could have joined her "first-party" claim against ODOT with the contribution claim against ODOT in Multnomah County and, thus, claim preclusion is inapplicable; (2) ODOT should have been judicially estopped from seeking issue preclusion in the Washington County action based on a judgment, the validity of which it was challenging on appeal; and (3) ODOT waived the right to invoke claim preclusion in Washington County because it failed to raise an "other action pending" objection, ORCP 21 A(3), in Multnomah County. We imply no view as to the abstract merits of any of those arguments if they had been raised and preserved.

*Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993) (citations omitted),[6] but was contrary to the final determination, following remand, in *Mitchell*:

> "Obviously, if the trial court had granted the motion for summary judgment, as this Court ruled it should have, there would have been no trial. If there had been no trial, there would have been no jury verdict finding Ms. Sherwood's degree of fault to be greater than that of ODOT. In the absence of that finding, there would have been nothing to support ODOT's claim of issue preclusion in this case."

We agree.

In *No. Pacific SS v. Guarisco*, 49 Or App 331, 619 P2d 1306 (1980), we considered whether a prior judgment, ultimately reversed on appeal for lack of personal jurisdiction, could "collaterally estop" the plaintiffs in a second related case. We noted that the effect of reversal was to render the companion case a "nullity" and that, "[t]herefore, there can be no collateral estoppel effect on this case, and the entry of summary judgment cannot stand." *Id.* at 333; *see also Community Bank v. Vassil*, 280 Or 139, 144, 570 P2d 66 (1977) ("Had the trial court in this case given collateral estoppel effect to the circuit court judgment * * * we would have reversed that holding because of our reversal in [an earlier related case]. Any error by the trial court in this respect cannot, therefore, be prejudicial under the present circumstances.").

■      ODOT nevertheless suggests that our reversals in those cases are materially distinguishable from the facts presented here because our reversal in *Mitchell* was unrelated to

---

[6] *Nelson* describes the prerequisites for the application of issue preclusion under Oregon law:

"1. The issue in the two proceedings is identical.

"2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

"3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

"4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

"5. The prior proceeding was the type of proceeding to which this court .l give preclusive effect." *Nelson*, 318 Or at 104 (citations omitted).

the allocation of fault between ODOT and Noralee. We disagree. Although the trial court properly applied issue preclusion under the then-existing circumstances—*viz.*, the *Mitchell* judgment was on appeal but had not yet been reversed[7]—our subsequent reversal in *Mitchell* necessarily obviated the jury's apportionment of comparative fault. Indeed, as plaintiffs assert, our holding in *Mitchell* established that the jury should never have decided the question of comparative fault. Consequently, the Multnomah County jury's apportionment of predominant fault to Noralee was a nullity and did not bar either Noralee's personal injury claim or David's loss of consortium claim.

Given that holding, the dismissal of David's loss of consortium claim must be reversed. Although ODOT invoked both issue and claim preclusion in seeking summary judgment against Noralee's negligence claim, it relied exclusively on issue preclusion in moving against David's loss of consortium claim. *See generally Wolff v. Du Puis*, 233 Or 317, 320, 378 P2d 707 (1963) ("[T]he cause of action for loss of consortium in favor of the spouse of an injured person is an independent action which stands on its own footing.").[8] Consequently, we reverse and remand that claim for trial.

■     We proceed, then, to consider whether claim preclusion bars Noralee's negligence claim. *Rennie v. Freeway Transport*, 294 Or 319, 656 P2d 919 (1982), describes that doctrine:

"We start with the general rule, well established in this state, that a plaintiff who has prosecuted one action against a defendant through to final judgment binding on the parties is barred on *res judicata* grounds from prosecuting another action against the same defendant where the claim

---

[7] As ODOT notes, under Oregon law the mere pendency of an appeal "does not affect the preclusive effect of a prior judgment." *Lee v. Mitchell*, 152 Or App 159, 166 n 11, 953 P2d 414 (1998). However, that does not mean that the prior judgment, once reversed, must continue to be given preclusive effect. *See, e.g., No. Pacific SS,* 49 Or App at 333; *Community Bank,* 280 Or at 144.

[8] An exception to that general principle is that the primarily injured spouse's comparative fault is a defense to the other spouse's recovery for loss of consortium. *See Ross v. Cuthbert*, 239 Or 429, 436, 397 P2d 529 (1964); *Lakin v. Senco Products, Inc.*, 144 Or App 52, 81, 925 P2d 107 (1996), *aff'd* 329 Or 62, 987 P2d 463, *mod on recons* 329 Or 369, 987 P2d 476 (1999).

in the second action is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action." *Id.* at 323.

Claim preclusion bars both the relitigation of claims that were previously litigated and the prosecution of claims that, though never litigated, "could have been litigated in the first instance." *Dean v. Exotic Veneers, Inc.*, 271 Or 188, 194, 531 P2d 266 (1975). Consequently, to avoid the risk of subsequent claim preclusion, a "plaintiff must seek and exhaust all alternative theories for recovery in one action." *Id.*

▮ ODOT contends that all of the elements for claim preclusion are satisfied. In particular, ODOT asserts that both this action and the Multnomah County litigation arise out of the same "factual transaction," the collision on Canyon Road, and that Noralee could have joined her "first-party" personal injury claims against ODOT as an alternative remedy in the Multnomah County action.

Noralee counters that claim preclusion is inapposite for two reasons. First, our reversal in *Mitchell* obviates any claim-preclusive effect from the adjudication of that action. Second, Noralee was merely a "nominal party" in the Multnomah County litigation because her insurer, Safeco, was, in fact, the "real party in interest" with respect to both the resolution of Mitchell's claims and the prosecution of the contribution claim against ODOT. As noted, *see* note 5 above, Noralee did *not* argue to the trial court that her personal injury claims could not have been joined in the Multnomah County action. Consequently, for purposes of this appeal, we assume, without deciding, that Noralee's personal injury claims against ODOT could have been raised in the Multnomah County litigation.

Noralee's argument that our holding in *Mitchell* effectively preempts application of *claim* preclusion misapprehends the nature and operation of that doctrine. Although we reversed and remanded for entry of judgment in favor of ODOT, 161 Or App at 383, nothing in that holding altered the fundamental facts that *Mitchell* was litigated to final

judgment on the merits,[9] and that, as we necessarily assume for purposes of this appeal, *see* note 5 above, Noralee could have raised her direct claims against ODOT in the context of that litigation but failed to do so. *See Rennie*, 294 Or at 323 (adopting the transactional approach to claim preclusion). Given those predicates, nothing in *Mitchell* affected the applicability of claim preclusion.[10]

Noralee argues, alternatively, that she was merely a nominal party in the Multnomah County action and that, consequently, claim preclusion is inapposite. In a related sense, she assets that, because Safeco controlled the defense of Mitchell's claims and the prosecution of the third-party claim against ODOT, she was denied a full and fair opportunity to present her case. Noralee relies primarily on *Restatement (Second) of Judgments* § 37 (1982):

> "A person denominated as the party having the proprietary or other enforceable interest in the subject matter of an action is bound by and entitled to the benefits of the rules of res judicata if he has put the person controlling the action in a position so to denominate him, unless he lacks such an interest and the opposing party has knowledge of that fact."

---

[9] Our determination that ODOT could not be liable for contribution because Mitchell failed to serve a statutory notice of claim on ODOT is a holding on the merits for purposes of claim preclusion. *See Restatement (Second) of Judgments* § 19 comment b (1982) ("Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than for dismissal for lack of jurisdiction, for improper venue, or for failure to join a party * * *, operates as an adjudication on the merits."); *see generally Drews v. EBI Companies*, 310 Or 134, 140-41, 795 P2d 531 (1990) (citing *Restatement (Second) of Judgments* § 19 with approval).

[10] Noralee's reliance on *Restatement (Second) of Judgments* § 20(2) (1982) is unavailing. That section states:

> "A valid and final personal judgment for the defendant, which rests on * * * plaintiff's failure to satisfy a precondition to suit, does not bar another action by the plaintiff instituted *after the claim has matured, or the precondition has been satisfied*, unless a second action is precluded by operation of the substantive law." (Emphasis added.)

By its own terms, section 20(2) applies only where the prior action was dismissed as unripe, but subsequent maturity of the claim, *i.e.*, satisfaction of the precondition, remained possible. Here, in contrast, the basis of the final judgment of dismissal is that Mitchell failed to give ODOT timely notice of claim—a defect that can *never* be cured.

We reject Noralee's "nominal party"/"lack of control" arguments for any of several reasons. First, we are unaware of any Oregon authority—and Noralee cites none—that a named defendant can be rendered a "nominal party" merely by the fact of insurance. The potential availability of indemnity does not alter the legal and practical reality that the defendant's name is on the pleadings and, potentially, on the judgment.

Moreover, Noralee did, in fact, have a real stake in the outcome of the Multnomah County litigation. That was so, not only because Mitchell's prayer exceeded the Sherwood's Safeco policy limits, but also because of the potential issue-preclusive effects of any comparative fault determination *vis-à-vis* ODOT. Comment (f) to the *Restatement (Second) of Judgments* § 39 (1982) explains that principle:

> "A party surrendering control of litigation involving his interests is bound by determinations in it as against the opposing party, in the absence of grounds such as fraud that would permit him to avoid the judgment. In effect, his transfer of control converts the action into one conducted by a representative on his behalf, with like effects."

*See also Restatement (Second) of Judgments* § 37, comment c (1982) (addressing claim preclusion: "The transferor is bound if he conducts himself in such a way that the opposing party reasonably supposes him to be the holder of the claim. The transferor's subscription to the complaint or participation in the action, in the absence of contrary manifestation, is ordinarily a sufficient basis for the opposing party to make that supposition.").

Finally, because of their mutual stake in the outcome—which depended on maximizing ODOT's fault and concomitantly minimizing Noralee's fault—the interests of insurer and insured in the Multnomah County litigation at least ostensibly coincided. Nevertheless, if Safeco somehow wrongfully usurped control of the Multnomah County litigation or breached its duty of adequate representation, Noralee is not without remedies against Safeco. *See Georgetown Realty v. The Home Ins. Co.*, 313 Or 97, 110, 831 P2d 7 (1992) (once a liability insurer "agrees to provide legal representation and to stand in the shoes of the party that has been

sued," a plaintiff could bring an action in negligence against the insurer for failure to properly defend a claim against the insured that resulted in excess liability); *Bollam v. Fireman's Fund Ins. Co.*, 76 Or App 267, 709 P2d 1095 (1985), *rev'd on other grounds* 302 Or 343, 730 P2d 542 (1986) (insurer liable to insured for negligent handling of claim against insured).

In sum, Noralee was not merely a "nominal" party to the Multnomah County litigation, and, thus, cannot avoid claim preclusion because of an asserted lack of control over that litigation. The court correctly dismissed Noralee's negligence claim as barred by claim preclusion.

We turn, finally, to the dismissal of Nathan's claim for negligent infliction of emotional distress. That claim, which was distinct from Nathan's now-settled negligence claim for his own physical injuries, alleged that Nathan was entitled to recover for emotional distress he suffered as a result of seeing his mother injured during the accident. *See* 170 Or App at 68-69 (describing pleadings). Thus, when read in context with Count 2, Count 3 does not seek emotional distress damages resulting from Nathan's own personal injuries, but, instead, seeks damages resulting solely from seeing another person (his mother) injured in the same accident in which Nathan himself was injured. The trial court concluded that that claim was insufficient as a matter of law. We disagree. *See Saechao*, 78 Or App 340.

■ *Saechao* is controlling. There, the plaintiffs were three children who witnessed the death of their two-year-old brother, who was killed when the defendant's car backed over his tricycle. *Id.* One of the children, Kae Fou, was also struck by the car as he tried to rescue his brother, and the other two siblings were standing on the sidewalk near the driveway but suffered no physical injuries. *Id.* at 343. Kae Fou sought to recover not only for his personal injuries, but also for the emotional distress from seeing his brother's death; the other two children alleged separate claims for negligent infliction of emotional distress. The trial court dismissed the other two children's claims but concluded that under the "impact rule," Kae Fou could recover for emotional distress from witnessing his brother's death. We affirmed. *Id.* at 348.

In so holding, we rejected the "zone of danger" rule in favor of the "impact rule." *See Saechao*, 78 Or App at 345-47. We described the "impact rule" as providing that:

"[O]nly a person who suffers an impact from the same force which injures a third person may recover for emotional distress due to witnessing the injury to the third person." *Id*. at 343, *citing* W. Page Keeton et al, *Prosser and Keeton on the Law of Torts* § 54, 365 (5th ed 1984).

Thus, although the other two siblings, who suffered no physical injury, could not recover merely because they witnessed the fatal accident from within the "zone of danger," Kae Fou was entitled to damages for his extreme emotional trauma from seeing his brother killed. *Saechao*, 78 Or App at 345, 349.

We perceive no principled distinction between Kae Fou's emotional distress claim in *Saechao* and Nathan's claim here. Nor, contrary to ODOT's suggestion on appeal, have subsequent decisions addressing negligent infliction of emotional distress somehow implicitly qualified or repudiated *Saechao*. *See, e.g., Hammond v. Central Lane Communications Center*, 312 Or 17, 24, 816 P2d 593 (1991) (citing *Saechao* with approval); *Heusser v. Jackson County Health Dept*, 92 Or App 156, 159-60, 757 P2d 1363 (1988), *rev den* 307 Or 326 (1989) (plaintiff's claim for emotional distress from defendant's negligent inoculation of her children failed to state claim under *Saechao's* "impact" rule). The trial court, consequently, erred in dismissing Nathan's claim for negligent infliction of emotional distress.

Reversed and remanded as to dismissal of Counts 3 and 4; otherwise affirmed.