**PEKIN INSURANCE COMPANY,**
**Appellant,**

**v.**

**Rhiney HUGH, Individually and as Administrator of the Estate of Tabitha E. Hugh, Hope Hugh, Guaranty Bank and Trust Co., Conservator for the Conservatorship of Aubrey Coppes, Appellees.**

No. 92–584.

Supreme Court of Iowa.

June 16, 1993.

John M. Bickel and Diane Kutzko of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellant.

John Riccolo and David L. Baker of Riccolo & Baker, P.C., Cedar Rapids, for appellees.

erty. This in no way expands the limited gist of a replevin action. *See Marx Truck Line, Inc.,*

260 Iowa at 548–49, 150 N.W.2d at 106.

LAVORATO, Justice.

In this single-issue appeal, we must decide whether emotional distress arising from a bystander claim constitutes a bodily injury within the meaning of an underinsured provision in an automobile liability policy. The district court thought so and so do we.

The parties stipulated to the facts in this case, so they are undisputed. Pekin Insurance Company issued an automobile policy to Rhiney Hugh. The policy names Rhiney, his wife Hope, their daughters Emma and Tabitha, and Tabitha's daughter Aubrey as insureds.

In February 1990 Tabitha was driving the family car which was in the name of her father Rhiney. A car, driven by Kelly Joseph Kann, crossed the centerline and collided head-on with the Hugh car. At the time, Hope, Aubrey, and Emma were passengers in the Hugh car. Tabitha and Emma died of injuries sustained in the collision.

Kann had an automobile liability policy with limits of $40,000. The Hughs settled a personal injury action they brought against Kann for the $40,000 limits. The settlement reserved the Hughs' rights against Pekin.

Pekin then settled with the estates of Tabitha and Emma for the $100,000 "per person" limits of the underinsured coverage in the policy. In the settlement Pekin obtained a release from Rhiney as administrator. The "per occurrence" limits of the underinsured coverage is $300,000.

Hope and Aubrey's conservator made a demand on Pekin for all or part of the remaining $100,000 of the $300,000 total coverage under the underinsured provisions of the Pekin policy. As we said, Pekin had paid Emma's estate $100,000 and Tabitha's estate $100,000, leaving $100,000 out of the $300,000 per occurrence limits. Hope's and the conservator's demand was for emotional distress Hope and Aubrey had allegedly sustained as bystanders when they witnessed the deaths of Tabitha and Emma.

Pekin then filed this declaratory judgment action against (1) Rhiney individually and as administrator of Tabitha's estate, (2) Hope Hugh, and (3) Aubrey's conservator. Both sides filed motions for summary judgment.

Pekin's motion is based on the following theory. Pekin has no obligation regarding Hope's and Aubrey's bystander claims. This is so because their alleged emotional distress damages arise out of the bodily injuries of Tabitha and Emma. For this reason, Hope's and Aubrey's damages are covered by the respective per person limits of liability for the injuries of Tabitha and Emma—limits that Pekin has paid in full to the estates of Tabitha and Emma.

In contrast, Hope's and Aubrey's motion is based on the following theory. The injuries underlying their bystander claims are independent bodily injuries, separate from the bodily injuries suffered by Tabitha and Emma. For this reason Pekin is liable for their bystander claims to the extent Kann would be liable for such claims. These claims, of course, would be limited to the remaining $100,000 of the $300,000 per occurrence underinsurance coverage limits.

The district court agreed with Hope and Aubrey and sustained their motion for summary judgment. Pekin appealed from this ruling. Both sides rely here on the same theories they urged in their motions.

The parties agreed that the demand Hope and Aubrey made on Pekin was for a " 'bystander' claim, *i.e.,* emotional distress ... sustained as a result of witnessing" the deaths of Tabitha and Emma. We insinuate in no way whether the bystander claims themselves are valid.

The sole question centers on what the term bodily injury in Pekin's policy encompasses. More specifically, the question is whether an injury resulting from emotional distress is recoverable as a bodily injury under the policy when the person sustaining such injury was in no way externally touched by the vehicle. If the answer is yes, then the $100,000 remaining of the $300,000 per occurrence underinsurance

coverage limits is available to satisfy Hope's and Aubrey's bystander claims.

Another way of putting the question is whether the bystander claims are subject to the "per person" limitation or to the "per occurrence" limitation of the underinsured provisions of the policy. If the latter, then the amount remaining of the per occurrence limits is available to satisfy the bystander claims.

The relevant policy language in the underinsured portion of the Pekin policy provides:

[Coverage]

We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of *bodily injury:*
1. Sustained by an "insured;" and
2. Caused by an accident.

[Limit of Liability for Underinsurance Coverage]

The limit of liability shown in the Declarations for each person [$100,000] for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of service or death, *arising out of "bodily injury" sustained by any one person* in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident [$300,000] for Underinsured Motorists Coverage is our maximum limit of liability for all damages for *"bodily injury" resulting from any one accident.*
(Emphasis added.)

Bodily injury is defined in the definitional provisions of the policy. The term is there defined as "bodily harm, sickness or disease, including death that results."

Pekin relies heavily on two cases: *Lepic v. Iowa Mutual Insurance Co.,* 402 N.W.2d 758 (Iowa 1987) and *Dahlke v. State Farm Mutual Automobile Insurance Co.,* 451 N.W.2d 813 (Iowa 1990).

In *Lepic*—a consolidated appeal of two cases having a common issue—the plaintiffs sought to recover for loss of consortium regarding their children under the per occurrence limits ($300,000) of their underinsured coverage. We limited their recoveries to the $100,000 per person limits of the underinsured coverage provisions which, among other things, provided:

The limit of liability ... for "each person" for Underinsured Motorists Coverage is our maximum limit of liability *for all damages for bodily injury sustained by any one person in any one accident.*

*Lepic,* 402 N.W.2d at 760 (emphasis added). We did so on the theory that loss of consortium is not a separate bodily injury for purposes of this policy language. *Id.* at 763. We recognized that our previous cases had viewed loss of consortium as an injury personal to the spouse or parent deprived of his or her spouse's or child's consortium. *Id.* Following the lead of the majority of jurisdictions, we were, moreover, unwilling "to extend this line of reasoning to declare that loss of consortium is a *bodily* injury to the deprived spouse or parent." *Id.* We were persuaded by the rationale that loss of consortium damages are a direct consequence of and dependent upon the underlying bodily injury suffered by the injured spouse or child. *Id.* at 763–65. Under this rationale we held that the parents' loss of consortium claims in *Lepic* had to be lumped with their children's claims in determining if the "each person" limits of liability had been exhausted. *Id.* at 765.

In *Dahlke* the plaintiffs sought recovery under the uninsured motorist provisions of their policy for psychological and physical effects on them arising out of the loss of their son who was killed in an auto collision with an uninsured driver. The specific policy provision in question obligated the insured to "pay for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle." *Dahlke,* 451 N.W.2d at 814. The policy defined bodily injury as "bodily injury to a *person* and sickness, disease or death which results from it." *Id.* at 815. Citing *Lepic,* we recognized that the parents' injuries—psychological and physical effects arising from the loss of their child—were

not separate bodily injuries for purposes of their uninsured motorist coverage. *Id.* Again, the rationale was that the parents' injuries were a direct consequence of and dependent upon the child's underlying bodily injury. *Id.* The parents' injuries were therefore held not to be bodily injuries for purposes of the parents' uninsured coverage. *Id.*

We agree with the Hughs that *Dahlke* is an extension of the principle we announced in *Lepic.* Simply put, *Lepic* says that loss of consortium injuries are not separate bodily injuries.

*Dahlke* says that loss of consortium injuries—even if accompanied by physical manifestations—are also not separate bodily injuries. Such manifestations are still a direct consequence of and dependent upon the underlying bodily injury claim for which recovery is sought. *Cf. United Pacific Ins. Co. v. Edgecomb,* 41 Wash.App. 741, 743, 706 P.2d 233, 234 (1985) (father's grief and mental anguish are consequential damages arising from injury to son, rather than direct damages).

We note that the policy here expressly provides that the per person limits of the underinsured coverage expressly include a loss of consortium claim. That language, again, provides:

> The limit of liability shown in the Declarations for each person [$100,000] for Underinsured Motorists Coverage is our maximum limit of liability for all damages, *including damages for ... loss of service ... arising out of "bodily injury" sustained by any one person* in any one accident.

(Emphasis added.) In short, this language tracks what we said in *Lepic* and *Dahlke.* That is, loss of consortium damages are a direct consequence of and dependent upon the bodily injury claim for which coverage is sought. This provision therefore excepts the loss of consortium claim from a separate claim for bodily injury by a deprived spouse, parent, or child.

This brings us to the decisive question in this case: Is the injury suffered in a bystander claim a *bodily* injury to the party making the claim?

■ This court recognized bystander claims in *Barnhill v. Davis,* 300 N.W.2d 104 (Iowa 1981). The court summarized the elements of such claims as follows:

> [T]he elements of a bystander's claim in Iowa for emotional distress caused by witnessing peril to a victim proximately caused by the negligence of another are that:
>
> 1. The bystander was located near the scene of the accident.
>
> 2. The emotional distress resulted from a direct emotional impact from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.
>
> 3. The bystander and the victim were husband and wife or related within the second degree of consanguinity or affinity.
>
> 4. A reasonable person in the position of the bystander would believe, and the bystander did believe, that the direct victim of the accident would be seriously injured or killed.
>
> 5. The emotional distress to the bystander must be serious.

*Barnhill,* 300 N.W.2d at 108. Unlike the loss of consortium claim, an injury the bystander suffers is not one that results from an injury to another person. Rather, the injury is *directly to the bystander* as a result of the bystander *seeing* the accident and *reasonably believing* that the direct victim of the accident would be seriously injured or killed. In addition, the emotional distress must be serious. That is, emotional distress "should ordinarily be accompanied with *physical* manifestations of the distress." *Id.* at 107–08 (emphasis added).

Other courts using similar reasoning have reached the same conclusion. *See, e.g., Wolfe v. State Farm Ins. Co.,* 224 N.J.Super. 348, 540 A.2d 871 (1988). In *Wolfe,* the question was whether a bystander claim was a bodily injury for purposes of a per accident liability provision of an automobile liability policy. Holding that it was, the court said:

512

When confronted with accidental death, the reaction to be expected of normal persons, ... is shock and fright. *It is the sensory perception of a shocking event which causes a separate, compensable injury....* Such emotional distress is not the equivalent of grief from losing a loved one, but is inflicted by the trauma of seeing a loved one suffer or die or of seeing efforts to revive [the loved one] being unsuccessful.

*Id.* at 352, 540 A.2d at 873 (citations omitted) (emphasis added). *See also State Farm Mut. Auto. Ins. Co. v. Ramsey,* 295 S.C. 349, 350, 368 S.E.2d 477, 478 (Ct.App. 1988) (bystander claim held to be bodily injury for purposes of a liability coverage provision). *Cf. Detroit Auto. Inter–Ins. Exch. v. McMillan,* 159 Mich.App. 48, 54, 406 N.W.2d 232, 235 (1987) (per curiam) (apparently recognizing a bystander claim as a separate bodily injury for insurance purposes but holding that plaintiff's claim did not meet bystander claim criteria); *Edgecomb,* 41 Wash.App. at 743, 706 P.2d at 234 (same).

■ Whether Hope and Aubrey sustained bodily injuries is in the final analysis a fact question. The question involves a medical or psychological problem of proof rather than purely a question of law. Any attempt to distinguish between "physical" and "psychological" injuries just clouds the issue. This is because the medical community now knows that "every emotional disturbance has a physical aspect and every physical disturbance has an emotional aspect." Comment, *Negligently Inflicted Mental Distress: The Case For An Independent Tort,* 59 Geo.L.J. 1237, 1241, n. 24 (1971) (citation omitted). Whether Hope and Aubrey have suffered compensable injuries should not therefore turn on any artificial and arbitrary classification such as "physical" or "psychological."

■ Because we conclude the injury underlying a bystander claim is a bodily injury for purposes of insurance coverage here, the injury—emotional distress—is compensable to the extent of the $100,000 remaining of the $300,000 per occurrence underinsurance coverage limits. Such $100,000 is available to satisfy Hope's and Aubrey's bystander claims provided those claims are proven. The district court was correct in so ruling.

**AFFIRMED.**

All Justices concur except HARRIS, McGIVERIN, and LARSON, JJ., who dissent and CARTER, J., who takes no part.

HARRIS, Justice, dissenting.

I respectfully dissent. When we first recognized bystander claims we repeatedly characterized the claim as one for emotional distress. *Barnhill v. Davis,* 300 N.W.2d 104, 105, 106, 107, 108 (Iowa 1981).

In later cases we continued to characterize the bystander claim as one for emotional distress. *Fineran v. Pickett,* 465 N.W.2d 662, 664 (Iowa 1991) ("bystander recovery for emotional distress"; "right to recover emotional distress damages"; "liability for emotional distress"); *Niblo v. Parr Mfg., Inc.,* 445 N.W.2d 351, 354 (Iowa 1989) ("[w]e have allowed recovery for emotional distress without physical injury ... when a bystander suffered mental distress caused by witnessing the negligent infliction of serious injury to a close relative"); *Oberreuter v. Orion Indus., Inc.,* 342 N.W.2d 492, 494 (Iowa 1984) ("[R]ecovery for negligent infliction of emotional distress is intended to compensate plaintiff ... for the emotional trauma caused by plaintiff's visceral participation in the event. It is the added horror of witnessing (and probably endlessly reliving) the tragedy that is compensable, other *Barnhill* elements being present.").

As the majority concedes, the question in this case is straightforward: assuming the bystander's claim can be proven, does the injury constitute (1) a *bodily* injury to the party making the claim (in this case, Hope and Aubrey), or (2) merely a *personal* injury to the party making the claim? If the former, for purposes of insurance coverage, the bystander claim would be independently compensable up to the full $100,000 "per person" limit (subject only to the $300,000 "per occurrence" limit). If the

latter, for purposes of insurance coverage, the bystander claim merely arises out of the bodily injury of another insured and would be compensable only to the extent to which the damages from the other insured's bodily injury do not reach the $100,000 "per person" limit. *See Lepic v. Iowa Mut. Ins. Co.,* 402 N.W.2d 758 (Iowa 1987) (holding (1) loss of consortium may be a *personal* injury but cannot be a *bodily* injury under an underinsured motorist provision, and (2) "the 'each person' liability limit in [the relevant insurance policies] caps recovery for all claims arising from one bodily injury").

I think the correct answer is the second one. The claim is not for bodily injury; it is a personal injury claim. The second answer is demanded as a result of our consistent conclusion that the injury is for emotional distress. In *Dahlke v. State Farm Mutual Automobile Insurance Co.,* 451 N.W.2d 813 (Iowa 1990), we held the psychological and physical effects on parents arising from the loss of their son, who was killed in a collision with an uninsured driver, are not "bodily injuries" under the applicable insurance policies. We stated in *Dahlke* that "the term 'bodily injury' is clear on its face and does not include the physical manifestations of the parents' loss...." *Dahlke,* 451 N.W.2d at 815. In short, *Dahlke* stands for the proposition that emotional distress, even where accompanied by resulting physical manifestations, cannot be considered bodily injury. I am convinced that the majority's decision is contrary to our holding in *Dahlke.*

That *Dahlke* involved a loss of consortium claim is a distinction without a difference for purposes here. The insurance policy in *Dahlke,* unlike the policy in this case, did not except loss of consortium claims from claims for bodily injury. *Dahlke,* like this case, addressed the question whether emotional distress—although in the context of a loss of consortium claim rather than a bystander claim—is a bodily injury or a personal injury. *Dahlke* said it is a personal injury. In reaching this conclusion we relied in part on cases not involving loss of consortium claims. *Id.* The majority nevertheless says emotional distress can be a bodily injury, and that this is a fact question dependent upon the "physical aspect" of the emotional disturbance.

In all respect I think the majority is led astray by its focus on whether the injury is a *separate* bodily injury, *i.e.,* not a direct consequence of and dependent upon an underlying injury. That the injury in a bystander claim is separate and not dependent on an underlying injury in no way detracts from the fact that the claim is one for emotional distress. In deciding whether there was coverage under the policy, the question should be whether emotional distress is a bodily injury or a personal injury. More specifically the question should be whether emotional distress can at any time be a bodily injury. *Dahlke* says it cannot.

Once it has been determined that the injury underlying a bystander claim is not a bodily injury, for purposes of insurance coverage here the injury must be seen as a personal injury arising out of the bodily injury of another insured. As such, the injury, *i.e.,* emotional distress, is compensable only to the extent the damages from the other insured's bodily injury do not reach the $100,000 "per person" limit. *See Lepic,* 402 N.W.2d at 759.

Pekin discharged its full obligation under the policy by paying the "per person" limits for the bodily injuries suffered by Tabitha and Emma. Summary judgment should have been entered accordingly for Pekin. I would reverse.

McGIVERIN and LARSON, JJ., join this dissent.