1999 SD 99

Gregg R. NIELSON, personal representative of the estate of Karyn L. Nielson; and Judith L. Nielson, Plaintiffs and Appellants,

v.

AT & T CORP.; AT & T Corp., d/b/a AT & T Federal Systems; Lucent Technologies, Inc.; and Charles E. Davis, individually and d/b/a Midwestern Ditching, Defendants and Appellees.

No. 20613.

Supreme Court of South Dakota.

Argued March 24, 1999.

Decided July 28, 1999.

Veronica L. Bowen of Bangs, McCullen, Butler, Foye & Simmons, L.L.P., Rapid City, South Dakota, Attorneys for plaintiffs and appellants.

Thomas G. Fritz of Lynn, Jackson, Shultz & Lebrun, P.C., Rapid City, South Dakota, Attorney for defendantsand appellees, AT & T Lucent.

Alan Epstein and Thomas R. Dolven of Hall & Evans, LLP, Denver, Colorado, Attorneys for defendants and appellees AT & T.

Frank A. Bettmann of Finch Bettmann & Maks, P.C., Rapid City, South Dakota, Attorneys for defendants and appellee Davis.

SABERS, Justice

[¶ 1.] Gregg Nielson, father, personal representative of the Estate of Karyn Nielson, and Judith Nielson, mother, (Nielson) sued defendants alleging: 1) a claim for the wrongful death of their daughter, Karyn; 2) a survival claim on behalf of Karyn for the emotional fright and distress that she suffered in the moments before her death; and 3) a claim for negligent infliction of emotional distress on behalf of Judith for witnessing Karyn's death. The trial court granted summary judgment that Nielson's claims were barred by South Dakota's Equine Activities Act (SDCL Ch 42–11). We reverse and remand.

## FACTS

[¶ 2.] On August 13, 1993, Karyn Nielson, age 19, and her mother, Judith Nielson, rode their horses across a riding pasture leased by the Ellsworth Air Force Base Riding Club. During a controlled gallop, Karyn's horse tripped and somersault-

ed landing on Karyn. Judith was riding approximately 50 feet behind Karyn. Judith attempted to give Karyn CPR and later accompanied her to the hospital. Karyn died as a result of her injuries. At the time, Judith did not know what had caused Karyn's horse to trip.

[¶ 3.] On September 3, 1996, Nielson filed a complaint claiming that Karyn's horse tripped because it stepped into a cable trench dug by AT & T Corporation, Lucent Technologies, Inc., with the assistance of a subcontractor, Charles Davis (collectively referred to as defendants or AT & T). Nielson claims that AT & T failed to properly fill and compact the trench and failed to warn riders of the trench. As indicated, Nielson alleges: 1) a wrongful death claim; 2) a survival action on behalf of Karyn for the emotional fright and distress that she suffered in the moments before her death; and 3) a claim for negligent infliction of emotional distress on behalf of Judith. As a result of witnessing Karyn's death, Judith claims to have suffered severe emotional distress with physical manifestations. She claims that Karyn's death is partially responsible for her quitting her nursing career.

[¶ 4.] The trial court granted summary judgment for AT & T finding that all of Nielson's claims are barred by South Dakota's equine activities statutes (SDCL Ch 42–11). It found that the statutes were constitutional as applied. In addition, the trial court held that Judith's claim for negligent infliction of emotional distress in witnessing Karyn's death is not recognized under South Dakota law.

[¶ 5.] Nielson appeals raising the following issues:

1. Whether the trial court erred in interpreting the South Dakota Equine Activities Act to grant defendants immunity under the facts of Karyn's death.

2. Whether the South Dakota Equine Activities Act is constitutional as applied to the facts of this case.

3. Whether the trial court erred in holding that Judith's claim for negligent infliction of emotional distress is inactionable as a matter of law.

## STANDARD OF REVIEW

[¶ 6.] Our standard of review for summary judgment is well-established:

In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Weiss v. Van Norman*, 1997 SD 40, ¶ 9, 562 N.W.2d 113, 115 (quoting *Lamp v. First Nat'l Bank of Garretson*, 496 N.W.2d 581, 583 (S.D.1993) (citation omitted)). "The burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law." *Weiss*, 1997 SD 40 at ¶ 9, 562 N.W.2d at 115 (quoting *State Dep't of Revenue v. Thiewes*, 448 N.W.2d 1, 2 (S.D.1989) (citation omitted)). If there are no genuine issues of material fact, then summary judgment will be affirmed if the trial court correctly decided the legal issues before it. *Weiss*, 1997 SD 40 at ¶ 9, 562 N.W.2d at 115 (citing *Farmland Ins. Cos. v. Heitmann*, 498 N.W.2d 620, 622 (S.D.1993) (citing *Stroh v. Town of Java*, 463 N.W.2d 923 (S.D.1990); *Bego v. Gordon*, 407 N.W.2d 801 (S.D.1987); *Trapp v. Madera Pacific, Inc.*, 390 N.W.2d 558 (S.D.1986))).

[¶ 7.] **1. WHETHER THE TRIAL COURT ERRED IN INTERPRETING THE SOUTH DAKOTA EQUINE ACTIVITIES ACT TO GRANT AT & T IMMUNITY UNDER THE FACTS OF KARYN'S DEATH.**

[¶ 8.] The trial court granted summary judgment for AT & T finding that the South Dakota Equine Activities Act (SDCL Ch 42–11) provided AT & T immunity against Nielson's claims. It found that AT & T, as "any other person" under SDCL 42–11–2, qualified for immunity from claims resulting from the "inherent risks" of equine activities under SDCL 42–11–1(6).

[¶ 9.] The South Dakota Equine Activities Act (SDCL Ch 42–11) became effective July 1, 1993, approximately six weeks before Karyn's death. SDCL 42–11–2 provides:

No equine activity sponsor, equine professional, doctor of veterinary medicine, *or any other person,* is liable for an injury to or the death of a participant resulting from the inherent risks of equine activities.

(Emphasis added).

[¶ 10.] "Equine activity sponsor" is defined as:

any individual, group, club, partnership, or corporation, whether or not the sponsor is operating for profit or nonprofit, which sponsors, organizes, or provides the facilities for an equine activity, including pony clubs, 4–H clubs, hunt clubs, riding clubs, school and college-sponsored classes, programs and activities, therapeutic riding programs, and operators, instructors, and promoters of equine facilities, including stables, club-houses, ponyride strings, fairs, and arenas at which the activity is held[.]

SDCL 42–11–1(4). "Equine professional" is defined as "any person engaged for compensation in instructing a participant or renting to a participant an equine for the purpose of riding, driving, racing or being a passenger upon the equine or engaged in renting equipment or tack to a participant[.]" SDCL 42–11–1(5).

[¶ 11.] SDCL 42–11–1(6) defines "inherent risks of equine activities" as:

[T]hose dangers or conditions which are an integral part of equine activities, including:

(a) The propensity of the animal to behave in ways that may result in injury, harm, or death to persons on or around them;

(b) The unpredictability of the animal's reaction to such things as sounds, sudden movement, and unfamiliar objects, persons, or other animals;

(c) Certain hazards such as surface and subsurface conditions;

(d) Collisions with other animals or objects;

(e) The potential of a participant to act in a negligent manner that may contribute to injury to the participant or others, such as failing to maintain control over the animal or not acting within the participant's ability[.]

[¶ 12.] SDCL 42–11–5 provides:

Each equine professional shall post and maintain the following sign:

### WARNING

Under South Dakota law, an equine professional is not liable for an injury to or the death of a participant in equine activities resulting from the inherent risks of equine activities, pursuant to § 42–11–2.

Such signs shall be placed in a clearly visible location on or near stables, corrals, race tracks or arenas where the equine professional conducts equine activities. The warning notice shall appear on the sign in black letters, with each letter being a minimum of one inch in height. Each written contract entered into by an equine professional for the providing of professional services, instruction, or the rental of equipment

or tack or an equine to a participant, whether or not the contract involves equine activities on or off the location or site of the equine professional's business, shall contain in clearly readable print the warning notice provided in this chapter.

[¶ 13.] Nielson claims that AT & T was not involved in the sponsorship of equine activities and was not within the protection provided by these statutes. Nielson claims that the trial court's interpretation of "any other person" in SDCL 42–11–2 "renders surplusage the itemization of persons protected by the statute[.]" Nielson further claims that a man-made trench is not an "inherent risk of equine activities" and AT & T is not entitled to immunity because a warning sign was not posted as required by SDCL 42–11–5.

[¶ 14.] "Questions of law such as statutory interpretation are reviewed by the Court de novo[.]" *Moss v. Guttormson*, 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17 (quoting *U.S. West Communications, Inc. v. Public Utilities Comm'n*, 505 N.W.2d 115, 122–23 (S.D.1993) (citations omitted)). "The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute." *Id.* "Since statutes must be construed according to their intent, the intent must be determined from the statute as a whole, as well as enactments relating to the same subject." *Id.* "But, in construing statutes together it is presumed that the legislature did not intend an absurd or unreasonable result." *Id.*

[¶ 15.] AT & T claims that it is entitled to immunity under SDCL 42–11–2 as "any other person" because the language of the statute provides immunity to all persons, regardless of their occupation, status, or their foreseeable involvement with equine activities. We disagree. Under the canon of statutory construction known as *ejusdem generis*, "where general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general class as those enumerated." *In re Grievance of Wendell*, 1998 SD 130, ¶ 7, 587 N.W.2d 595, 597 (quoting Black's Law Dictionary 517 (6th Ed.1990)). *See also In re Grievance of O'Neill*, 347 N.W.2d 887, 889 (S.D.1984), *appeal after remand*, *O'Neill v. South Dakota Bd. of Charities and Corrections*, 377 N.W.2d 587 (S.D.1985) (stating that: "[E]jusdem generis principle holds that where general words follow ... the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general kind as those enumerated."). Therefore, the meaning of "any other person" is discerned by considering the context in which it is used.

[¶ 16.] SDCL 42–11–2 grants immunity to an "equine activity sponsor, equine professional, doctor of veterinary medicine, or *any other person[.]* " (Emphasis added). Applying the principle of ejusdem generis, "any other person" is limited to other people involved in equine activities and does not extend blanket immunity. If the legislature intended to provide immunity to all people, it would not have specifically list those entitled to immunity. "We presume the Legislature does not insert surplusage into its enactments." *Mid–Century Ins. Co. v. Lyon*, 1997 SD 50, ¶ 9, 562 N.W.2d 888, 892 (citing *National Farmers v. Universal*, 534 N.W.2d 63, 65 (S.D.1995) (citing *Revier v. School Bd. of Sioux Falls*, 300 N.W.2d 55, 57 (S.D.1980); 2A Sutherland, *Statutes and Statutory Construction* § 46.06, at 119–20 (5th Ed.1992))). Also, "[t]his court will not construe a statute in a way that renders parts to be duplicative and surplusage." *Delano v. Petteys*, 520 N.W.2d 606, 609 (S.D.1994) (citing *Farmland Ins. Co. v. Heitmann*, 498 N.W.2d 620 (S.D. 1993); *Revier*, 300 N.W.2d at 57).

[¶ 17.] Construing the Equine Activities Act as a whole, it is clear that the legislature intended to encourage equine activities by providing to those involved immuni-

ty from liability for injuries arising out of the unavoidable risks of equine activities. That purpose is not advanced by allowing AT & T to take refuge under the statutes when they are not involved in equine activities. Therefore, AT & T is not entitled to immunity as "any other person" under SDCL 42–11–2 as they are not within the general class of individuals enumerated in the statute.[1]

### [¶ 18.] 2. WHETHER A BYSTANDER'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS RESULTING FROM WITNESSING SERIOUS INJURY OR DEATH OF A THIRD PERSON IS RECOGNIZED AS A CAUSE OF ACTION UNDER SOUTH DAKOTA LAW.

[¶ 19.] The trial court found that Judith's claim for negligent infliction of emotional distress in witnessing her daughter's death is not a claim recognized under South Dakota law. It concluded that Judith did not fear for her own safety because she did not know what caused Karyn's horse to trip.[2] Therefore, the trial court concluded Judith was not within the zone of danger as a result of AT & T's alleged negligence.

[¶ 20.] AT & T claims that *In re Certif. of Questions of Law: Knowles v. United States,* 1996 SD 10, ¶ 43, 544 N.W.2d 183, 193 controls this issue. In *Knowles,* William and Jane Knowles brought a suit in federal court on their own behalf and on behalf of their son, Kris, for medical malpractice, emotional distress, and loss of consortium. The United States District Court for South Dakota, Western Division ruled that SDCL 21–3–11, which limited damages in medical malpractice actions to $1 million, was constitutional and entered judgment for $1 million. Knowles appeal-

ed and the Eighth Circuit Court of Appeals certified four questions to this court, including: "Does South Dakota law recognize emotional distress or loss of consortium for injuries to a minor child as a separate cause of action?" We concluded that South Dakota does not recognize "a parent's emotional distress or loss of consortium claim for injuries to a minor child." *Id.* However, our analysis in *Knowles* focused only on a parent's cause of action for loss of consortium. *See Id.* at ¶¶ 40–43, 544 N.W.2d at 192–93. In this case, we squarely address whether South Dakota law recognizes a bystander's claim for negligent infliction of emotional distress as a result of witnessing serious injury or death of a third person.

[¶ 21.] South Dakota law recognizes a cause of action for negligent infliction of emotional distress, requiring manifestation of physical symptoms. *Wright v. Coca Cola Bottling Co.,* 414 N.W.2d 608, 609 (S.D.1987). *See also Stene v. State Farm Mut. Auto. Ins. Co.,* 1998 SD 95, ¶ 30, 583 N.W.2d 399, 404; *Nelson v. WEB Water Dev. Ass'n, Inc.,* 507 N.W.2d 691, 699 (S.D.1993). However, Judith's claim is commonly referred to as a bystander's claim for negligent infliction of emotional distress. She claims to have suffered severe emotional distress from witnessing Karyn's death as a result of AT & T's alleged negligence. This is a case of first impression in South Dakota.

[¶ 22.] California was a leader in recognizing a bystander's claim for negligent infliction of emotional distress. In *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (Cal.1968), the California Supreme Court allowed a mother to recover for witnessing her daughter being hit by a car. California adopted a foreseeability test for a bystander's claim. The three

---

1. Because of this holding, it is not necessary to reach Nielson's claims that this "poorly filled and poorly compacted" trench was not within the "inherent risks of equine activities" nor those claims regarding the constitutionality of the act as applied to this case.

2. Nielson learned of the trench several weeks after Karyn's death.

factors considered in *Dillon* to determine foreseeability were:

(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.

(2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.

(3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

69 Cal.Rptr. 72, 441 P.2d at 920.

[¶ 23.] Other jurisdictions began recognizing a bystander's claim for negligent infliction of emotional distress following *Dillon*. Although some adopted *Dillon's* foreseeability test, others adopted a zone of danger test. Generally, "the zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 547–48, 114 S.Ct. 2396, 2406, 129 L.Ed.2d 427, 443 (1994). The rationale for this test is that the defendant breached a duty to the bystander by endangering her safety and placing her in the zone of danger. The defendant is not relieved of liability for the bystander's emotional distress caused by witnessing peril to a third person by reason of the unusual or unforeseeable manner in which the distress occurred. *See* Restatement (Second) of Torts § 436 cmt f (1965).

[¶ 24.] A survey of our neighboring states reveals that most have recognized a bystander's claim for negligent infliction of emotional distress under certain circumstances.

[¶ 25.] Iowa recognized a bystander's claim for emotional distress in *Barnhill v. Davis*, 300 N.W.2d 104 (Iowa 1981). The elements of the claim are that:

1) The bystander was located near the scene of the accident.

2) The emotional distress resulted from a direct emotional impact from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.

3) The bystander and the victim were husband and wife or related within the second degree of consanguinity or affinity.

4) A reasonable person in the position of the bystander would believe, and the bystander did believe, that the direct victim of the accident would be seriously injured or killed.

5) The emotional distress to the bystander must be serious.

*Pekin Ins. Co. v. Hugh*, 501 N.W.2d 508, 511 (Iowa 1993) (citing *Barnhill*, 300 N.W.2d at 108). The emotional distress must ordinarily be accompanied with physical manifestation of the distress. *Pekin Ins. Co.*, 501 N.W.2d at 511 (citing *Barnhill*, 300 N.W.2d at 107–08).

[¶ 26.] Missouri recognized a cause of action for negligent infliction of emotional distress upon witnessing injury to a third person in *Asaro v. Cardinal Glennon Mem'l Hosp.*, 799 S.W.2d 595, 599–600 (Mo.1990). A plaintiff must show:

1) that the defendant should have realized that his conduct involved an unreasonable risk to the plaintiff,

2) that plaintiff was present at the scene of an injury producing, sudden event,

3) and that plaintiff was in the zone of danger, i.e., placed in a reasonable fear of physical injury to his or her own person.

*Id.*

[¶ 27.] Nebraska abandoned the zone of danger test in *James v. Lieb*, 221 Neb. 47, 375 N.W.2d 109 (Neb.1985). In its place, Nebraska adopted the foreseeability approach from *Dillon*. The factors consid-

ered in determining whether a bystander may recover for negligent infliction of emotional distress are:

    1) a seriously injured victim as the result of proven negligence of the defendant,

    2) an intimate familial relationship with the victim, and

    3) emotional distress so severe that no person could be expected to endure it.

*Vosburg v. Cenex–Land O'Lakes Agronomy Co.*, 245 Neb. 485, 513 N.W.2d 870, 873 (Neb.1994) (citing *Sell v. Mary Lanning Mem'l Hospital*, 243 Neb. 266, 498 N.W.2d 522 (Neb.1993); *Haselhorst v. State*, 240 Neb. 891, 485 N.W.2d 180 (Neb.1992)). Nebraska does not require contemporaneous observance of the accident or injury. *Vosburg*, 513 N.W.2d at 873.

[¶ 28.] Wyoming recognizes a bystander's claim for negligent infliction of emotional distress. *Gates v. Richardson*, 719 P.2d 193 (Wyo.1986). The elements of the cause of action are: 1) plaintiff must be within class of individuals entitled to bring a wrongful death claim; 2) plaintiff contemporaneously observed the accident or injury or arrived at the scene immediately after and before any material change in the condition or location of the victim; 3) victim must sustain a serious injury or die; and 4) plaintiff must realize the seriousness of the injury at the time it occurred. *Id.* at 198–201.

[¶ 29.] North Dakota embraces the zone of danger test. *Whetham v. Bismarck Hosp.*, 197 N.W.2d 678, 684 (N.D.1972). Minnesota and Colorado also require the bystander to be within the zone of danger before recovery is allowed. *Stadler v. Cross*, 295 N.W.2d 552 (Minn.1980); *James v. Harris*, 729 P.2d 986 (Colo.App. 1986).

[¶ 30.] After reviewing case law in other jurisdictions, we hold that South Dakota law recognizes a bystander's claim for neg-

ligent infliction of emotional distress caused by contemporaneous observation of the serious injury or death of a third party with whom the bystander has a close relationship. The bystander must be within the zone of danger. However, the emotional distress suffered may be caused by fear for the third person and need not be caused by the bystander's fear for his or her own safety. The negligently inflicted emotional distress must be accompanied with physical manifestations.[3]

[¶ 31.] Therefore, we reverse and remand for proceedings consistent with this opinion.

[¶ 32.] MILLER, Chief Justice and AMUNDSON, KONENKAMP and GILBERTSON, Justices, concur.

---

**3.** This holding is sufficient for the facts of this case. We leave all collateral questions for the development of the law on a case by case basis, or, the legislature, if they should so choose.