Geralyn S. ENGLER, Appellant,

v.

ILLINOIS FARMERS INSURANCE COMPANY, an Illinois corporation, Respondent.

No. A04–1445.

Supreme Court of Minnesota.

Dec. 15, 2005.

Mark David Streed, Meshbesher, Singer & Spence, Woodbury, for appellant.

Kathleen Margaret Loucks, Gislason & Hunter, LLP, Minnetonka, MN, for respondent.

Michael R. Fargione, Hauer, Fargione, Love, Landy & McELlistrem, P.A., Minneapolis, for Minnesota Trial Lawyers Assn.

Stephen Paul Laitinen, Larson King, St. Paul, for Minnesota Defense Lawyers Assn.

## OPINION

BLATZ, Chief Justice.

This case presents the narrow issue of whether a plaintiff who satisfies all of the elements of a claim for negligent infliction of emotional distress under Minnesota law may, as part of the claim, recover damages for distress caused by fearing for her son's safety or witnessing the defendant's negligent injury of her son. The district court concluded that damages for distress caused by witnessing negligent injury to another or fearing for the safety of another are not recoverable and thus limited recovery to those damages for distress arising out of the plaintiff's fear for her own safety. The court of appeals affirmed. We reverse and remand, holding that a plaintiff asserting a claim for negligent infliction of emotional distress may recover damages for distress caused by fearing for the safety of or by witnessing serious bodily injury to one with whom the plaintiff has a close relationship when such serious bodily injury was caused by the defendant's negligent conduct. To recover such damages, however, the plaintiff must still satisfy the three elements of a claim for negligent infliction of emotional distress: (1) the plaintiff was in the zone of danger of physical impact; (2) reasonably feared for her own safety; and (3) has severe emotional distress with physical manifestations.

The facts in this case are undisputed. On April 17, 1997, Geralyn Engler and her two sons were riding in a vehicle driven by Engler's boyfriend, B.R. They were going eastbound on 221st Avenue in Oak Grove,

Minnesota. When Engler's son, four-and-a-half-year-old J.E., stated that he needed to go to the bathroom, B.R. pulled the car to the side of the rural road, and Engler and J.E. got out of the car. J.E. walked about 30 feet to the tree line alongside the road, while Engler stood next to the car.

Beverly Wehmas, driving westbound on 221st Avenue, approached the location where B.R.'s car was stopped. As she neared B.R.'s car, Wehmas lost control of her vehicle, causing it to veer toward B.R.'s car and the tree line where J.E. was emerging from the woods. Engler saw Wehmas's vehicle careening toward B.R.'s car and believed that Wehmas's vehicle was going to hit her. Engler, however, soon realized that the vehicle was going to strike J.E. instead. Engler screamed and turned away just before Wehmas's vehicle struck J.E. A moment after the impact, Engler turned back and ran to J.E., who had been thrown into the woods, and carried him to B.R.'s car. A passing motorist stopped and telephoned 911, and an ambulance responding to the phone call transported J.E. to the hospital. J.E. sustained serious injuries from the accident, necessitating four days in intensive care and resulting in scarring.

At her deposition, Engler testified that she sought medical treatment a few months after the accident because she "did not feel like [her]self." She was irritable, did not want to get out of bed, cried frequently, and had lost all ambition. A doctor diagnosed Engler with post-traumatic stress syndrome and depression and prescribed antidepressants.

In July 1999, Engler filed suit against Wehmas asserting a claim for negligent infliction of emotional distress ("NIED"). The district court certified to the court of appeals the question of whether Engler could recover damages for distress caused by fearing for her son's safety and witnessing his injury, if she were able to prove the elements of a NIED claim. In answering the certified question, the court of appeals noted the apparent reluctance of Minnesota courts to extend liability in NIED claims and concluded that our court had not recognized a duty of care to protect persons from distress caused by witnessing harm to another. *Engler v. Wehmas*, 633 N.W.2d 868, 873 (Minn.App.2001) ("*Engler I*"). Declining to create new law, the court of appeals answered the certified question in the negative. *Id.* We granted Engler's petition for review, but, before oral argument, the parties settled the suit against Wehmas for $50,000, Wehmas's automobile insurance policy limit.

Claiming that her emotional distress damages exceeded the settlement amount, Engler subsequently brought this suit against Illinois Farmers Insurance Company ("Illinois Farmers"), her automobile insurance company, seeking underinsured motorist coverage. At the district court, Engler brought a motion seeking clarification of the scope of her recoverable damages. Relying on the court of appeals' decision in *Engler I*, the district court concluded that Engler "is not entitled to damages for emotional distress she may have suffered from as a result of either fearing for her son's safety or witnessing her son's injury." The court ruled that Engler's recoverable damages are "limited to the emotional distress she sustained as a result of her fear for her own safety." The parties stipulated that the court's decision on damages terminated Engler's suit because her damages arising out of fear for her own safety did not exceed $50,000 and thus did not entitle her to underinsured motorist coverage. Based on that stipulation, the district court entered judgment against Engler. The court of appeals affirmed in an unpublished opinion, concluding that its decision in *Engler I*

effectively decides this case. *Engler v. Illinois Farmers Ins. Co.*, A04–1445, 2005 WL 704100, at *1 (Minn.App. Mar.29, 2005) (*Engler II* ). We granted Engler's petition for review.

■ Whether Engler can recover damages for her distress caused by fearing for her son's safety or witnessing her son's injury is a question of law. We review questions of law de novo. *Alcozer v. N. Country Food Bank*, 635 N.W.2d 695, 707 (Minn.2001). Minnesota courts have long recognized a cause of action for NIED. In 1892, we first recognized a claim for NIED in *Purcell v. Saint Paul City Ry. Co.*, 48 Minn. 134, 50 N.W. 1034 (1892). The plaintiff in *Purcell*, a pregnant woman riding a cable car, suffered a "fright" when her car narrowly avoided colliding with another car. *Id.* at 137, 50 N.W. at 1034. As a result of her fright, the plaintiff experienced convulsions and miscarried, leading to a later illness. *Id.*, 50 N.W. at 1034. Our court permitted recovery for the miscarriage and illness, reasoning that the cable car company had breached its duty to "carry the plaintiff safely" and that there was an unbroken causal chain between that breach, the resulting fright, and the illness. *Id.* at 137–39, 50 N.W. at 1034–35. *Purcell* has set the standard for NIED claims in Minnesota for over 100 years.

■ To state a claim for NIED, a plaintiff must prove the four elements of a negligence claim, as well as three additional elements specific to NIED claims. *See K.A.C. v. Benson*, 527 N.W.2d 553, 559 (Minn.1995); *Purcell*, 48 Minn. at 137–38, 50 N.W. at 1034. The four elements of negligence are: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) the breach of the duty being the proximate cause of the injury. *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn.2001). In addition to the elements of negligence, a plaintiff claiming NIED must prove that "she: (1) was within the zone of danger of physical impact [created by the defendant's negligence]; (2) reasonably feared for her own safety; and (3) [consequently] suffered severe emotional distress with attendant physical manifestations." *K.A.C.*, 527 N.W.2d at 557.

For purposes of this appeal, the parties agree that the three elements specific to a NIED claim are met. They disagree, however, as to what damages Engler may recover. Engler seeks to recover damages not only for distress arising from her fear for her own safety when she believed Wehmas's car was going to hit her, but also for distress arising from her fear for J.E.'s safety and from witnessing his injury. Engler urges us to expand liability under Minnesota's current NIED test to permit the recovery of these damages. Under Engler's approach, the elements of a NIED claim would remain the same, but, once those elements were met, distress caused by fearing for the safety of another or witnessing injury to another could be recovered. Engler's argument is premised on the belief that a NIED plaintiff is entitled to recover all damages proximately caused by a defendant's negligent conduct.

In opposition, Illinois Farmers argues that damages for distress arising from fearing for another's safety or witnessing injury to another are not recoverable because no duty exists to protect an individual from such distress. Illinois Farmers asserts that a NIED plaintiff may only recover damages for fearing for her own safety.

While our previous NIED cases have primarily involved plaintiffs seeking to recover for distress caused by fearing for their own safety, a few cases have touched on the issue of NIED claims for distress arising from witnessing injury to another.

*See, e.g., Stadler v. Cross,* 295 N.W.2d 552, 554 (Minn.1980); *Okrina v. Midwestern Corp.,* 282 Minn. 400, 404, 165 N.W.2d 259, 262 (1969); *Sanderson v. N. Pac. Ry. Co.,* 88 Minn. 162, 166, 92 N.W. 542, 544 (1902). Unlike the present case, however, these cases did not involve a situation where the plaintiff was in the zone of physical danger and reasonably feared both for her own safety and for the safety of another.

We have never confronted the precise issue before us in this case—whether a person who is in the zone of danger and who fears both for his or her own safety and for the safety of another may recover for distress caused by fearing for the other's safety or witnessing the other's injury. While we believe our precedent provides a framework for resolving this issue, we also look to other states for guidance. By our count, approximately 45 states have considered the issue of bystander recovery,[1] and most have adopted tests that permit recovery in certain circumstances for distress caused by witnessing another's peril or injury. *See* Dale Joseph Gilsinger, Annotation, *Recovery Under State Law for Negligent Infliction of Emotional Distress Due to Witnessing Injury to Another Where Bystander Plaintiff Must Suffer Physical Impact or Be in Zone of Danger,* 89 A.L.R. 5th 255, 279–83 (2001) [hereinafter *Recovery Under Physical Impact or Zone of Danger*]; Dale Joseph Gilsinger, Annotation, *Recovery Under State Law for Negligent Infliction of Emotional Distress Under Rule of Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), *or Refinements Thereof,* 96 A.L.R. 5th 107, 113–33 (2001) [hereinafter *Recovery Under Dillon*]. The bystander recovery tests adopted by these states break down into three general categories: the "impact test," the "zone of danger test," and the "foreseeable bystander test." *See Consol. Rail Corp. v. Gottshall,* 512 U.S. 532, 546–48, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994) (cataloging states' bystander recovery tests).

The "impact test" permits recovery for distress from witnessing negligent injury to another only if the plaintiff experienced the same physical impact that injured the third-party victim. *See Lee v. State Farm Mut. Ins. Co.,* 272 Ga. 583, 533 S.E.2d 82, 86–87 (2000). The impact test originated in courts' efforts to avoid fraudulent emotional distress claims by requiring that the distress be tied to an objectively verifiable physical impact. *See Groves v. Taylor,* 729 N.E.2d 569, 572 (Ind.2000) (overturning Indiana's impact test). In recent decades, states have steadily abandoned the impact test in favor of more expansive bystander recovery tests. *See Gottshall,* 512 U.S. at 547, 114 S.Ct. 2396. Today, it appears that only three states—Georgia, Kentucky, and Oregon—retain the impact test for bystander recovery. *See Lee,* 533 S.E.2d at 86–87; *Michals v. William T. Watkins Mem'l United Methodist Church,* 873 S.W.2d 216, 218–19 (Ky.Ct.App.1994); *Sherwood v. Or. Dep't of Transp.,* 170 Or. App. 66, 11 P.3d 664, 671 (2000).

In contrast to the limited number of states that adhere to the impact test, approximately ten states have adopted the "zone of danger test" for bystander recovery. *See Recovery Under Physical Impact or Zone of Danger, supra,* at 279–83. The zone of danger test permits recovery for emotional distress caused by witnessing negligent injury to another only if the plaintiff was in the zone of danger of physical impact created by the defendant's conduct. *See, e.g., Nielson v. AT & T Corp.,*

---

**1.** The term "bystander recovery," as used in this opinion, refers to a NIED cause of action for distress caused by fearing for another's safety or witnessing negligent injury to another.

597 N.W.2d 434, 442 (S.D.1999). The plaintiff, however, need not suffer an actual physical impact. *See id.* Some states employing the zone of danger test also require that the plaintiff fear for his or her own safety. *See Williams v. Baker,* 572 A.2d 1062, 1064 (D.C.1990); *Asaro v. Cardinal Glennon Mem'l Hosp.,* 799 S.W.2d 595, 599–600 (Mo.1990). In addition, several states require a *physical* manifestation of the distress, not just emotional injury. *See, e.g., Keck v. Jackson,* 122 Ariz. 114, 593 P.2d 668, 669 (1979); *Nielson,* 597 N.W.2d at 442. Finally, a few states require the plaintiff to prove a close personal or familial relationship with the third-party victim, rather than a more attenuated relationship. *See, e.g., Keck,* 593 P.2d at 670; *Bovsun v. Sanperi,* 61 N.Y.2d 219, 473 N.Y.S.2d 357, 461 N.E.2d 843, 848 (1984).

The third test for bystander recovery—the test with the largest following among states—is the "foreseeable bystander test." *See Gottshall,* 512 U.S. at 548, 114 S.Ct. 2396. Approximately 29 states employ some version of this test. *See Recovery Under* Dillon, *supra,* at 138–39 nn. 8 & 11–13. It was first formulated by the California Supreme Court in *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968). In *Dillon,* the California court permitted NIED recovery by a mother who was outside of the zone of physical danger when she witnessed her daughter being struck and killed by a car. *Id.* at 914. The court ruled in favor of the mother, holding that a bystander may recover under NIED for witnessing negligent injury to another if the "defendant should

foresee fright or shock [to the plaintiff] severe enough to cause substantial injury in a person normally constituted"—essentially a foreseeability test to be decided on a case-by-case basis. *Id.* at 920. The court listed three factors to serve as guidelines for determining whether the plaintiff's distress was foreseeable:

(1) Whether plaintiff was located near the scene of the accident * * *.

(2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.

(3) Whether plaintiff and the victim were closely related * * *.

*Id.*

In 1989, the California Supreme Court narrowed the *Dillon* test by essentially converting the "guidelines" into required elements of a bystander NIED claim. *Thing v. La Chusa,* 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814, 815 (1989).[2] The court sought to rein in the ever-widening liability that lower courts' expansive interpretations of *Dillon's* foreseeability test had produced, noting that foreseeability alone does not provide a "meaningful restriction on the scope of the NIED action." *Thing,* 257 Cal.Rptr. 865, 771 P.2d at 826, 829–30. The court observed that "there are clear judicial days on which a court can foresee forever * * * but none on which that foresight alone provides a socially and judicially acceptable limit on

**2.** The court in *Thing* formulated the three elements slightly differently than it had in *Dillon.* The test for bystander recovery articulated in *Thing* permits recovery for distress arising from witnessing injury to another "only if the plaintiff: (1) is closely related to the [third-party] victim; (2) is present at the

scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim"; and "(3) as a result suffers emotional distress beyond that which would be anticipated in a disinterested witness." *Thing,* 257 Cal.Rptr. 865, 771 P.2d at 815.

recovery."[3] *Id.* at 830.

In our most recent NIED case involving distress at witnessing injury to another, we were invited to adopt the foreseeable bystander test. *Stadler,* 295 N.W.2d at 554. In *Stadler,* the parents of a child struck and injured by a car sued the driver for the distress they suffered due to witnessing their son's injury. *Id.* at 553. The mother witnessed the accident but, at the time the car struck her son, was several yards away from the zone of danger. *See id.* at 553. The father was playing rugby about 100 yards from the accident scene and was unaware that his son was the victim until after the accident. *Id.* Because neither parent was in the zone of danger, we denied recovery. *Id.* at 553–55. We held that a plaintiff who was not in the zone of danger may not recover for distress due to witnessing injury of another. *See id.* at 554.

In so holding, we expressly rejected the foreseeable bystander test adopted by California in *Dillon v. Legg,* which permits a NIED cause of action for a plaintiff outside the zone of danger. *Stadler,* 295 N.W.2d at 554–55. We expressed concern that the factors of the foreseeable bystander test are not conducive to precise definition and may lead to expansive and possibly arbitrary liability. *Id.* We further noted that workable, reasonable, and logical limits must be placed on a negligent tortfeasor's liability and observed that the

zone of danger test provides just such clear limits because "juries can objectively determine whether plaintiffs were within the zone of danger." *Id.* at 554. In contrast with the zone of danger test, "[n]one of the other proposed limitations can be as readily and consistently applied." *Id.* In *Stadler,* we stated that "[n]o arguments have been presented that persuade us that the problems we see in limiting liability once it is extended beyond the zone of danger of physical impact can be justly overcome." *Id.* at 555.

■ Nonetheless, while we soundly rejected the foreseeable bystander test in *Stadler,* we did not foreclose the expansion of Minnesota's current NIED zone of danger test to permit recovery of damages for distress caused by fearing for another's safety or witnessing negligent injury to another. Therefore, with the issue squarely before us, we now hold that a plaintiff may recover damages for distress caused by fearing for another's safety or witnessing serious injury to another if the plaintiff can prove that she: (1) was in the zone of danger of physical impact; (2) had an objectively reasonable fear for her own safety; (3) had severe emotional distress with attendant physical manifestations; and (4) stands in a close relationship to the third-party victim. In addition, to succeed with such a claim, the plaintiff also must establish that the defendant's negligent conduct—the conduct that created an un-

---

**3.** Finally, a few states have adopted an alternative version of the foreseeable bystander test—a "pure foreseeability test." *See, e.g., Campbell v. Animal Quarantine Station,* 63 Haw. 557, 632 P.2d 1066, 1069–70 (1981); *Sacco v. High Country Indep. Press, Inc.,* 271 Mont. 209, 896 P.2d 411, 425 (1995); *Johnson v. Ruark Obstetrics & Gynecology Assoc., P.A.,* 327 N.C. 283, 395 S.E.2d 85, 97 (1990). The pure foreseeability test permits bystander recovery whenever a plaintiff can prove that it was reasonably foreseeable that the defendant's negligent injury of the third-party vic-

tim would cause the plaintiff serious emotional distress, and the conduct did in fact cause such distress. *Sacco,* 896 P.2d at 425; *Johnson,* 395 S.E.2d at 97. This test arguably provides more expansive bystander recovery than any of the other tests because, unlike under the foreseeable bystander test, the foreseeability determination is not cabined by the imposition of mandatory elements, such as a close relationship or contemporaneous observation. *E.g., Campbell,* 632 P.2d at 1069–70; *see Thing,* 257 Cal.Rptr. 865, 771 P.2d at 826–30.

reasonable risk of physical injury to the plaintiff—caused serious bodily injury to the third-party victim.[4]

In so holding, we find the reasoning of the Restatement (Second) of Torts, explaining the zone of danger approach, persuasive. The Restatement provides that a plaintiff may recover for injury resulting from distress due to witnessing harm or peril to a third party if the defendant's conduct created an unreasonable risk of bodily harm to the plaintiff. Restatement (Second) of Torts §§ 313, 436 (1965). The rationale for this zone of danger test is that when a defendant has threatened a plaintiff with bodily harm, the defendant has breached "an original duty to the plaintiff to exercise care for his protection" and is thus liable for any harm suffered by the plaintiff due to the negligent conduct, even if the harm results in an unusual manner—i.e., from witnessing injury to others put in peril by that negligent conduct. Id. § 436 cmt. f. Other states employing the zone of danger test have also adopted this reasoning. See, e.g., Bovsun, 473 N.Y.S.2d 357, 461 N.E.2d at 847 (noting that "by unreasonably endangering the plaintiff's physical safety, the defendant has breached a duty owed to [the plaintiff] for which he or she should recover all damages sustained including those occasioned by witnessing the suffering of [another] who is also injured by the defendant's conduct"); Nielson, 597 N.W.2d at 441 ("The rationale for the test is that the defendant breached a duty to the bystander by endangering her safety and placing her in the zone of danger.").

The primary advantage of the zone of danger test is that it provides a bright line to limit recovery. Continued adherence to the zone of danger test thus avoids the pitfalls associated with the foreseeable bystander test that we voiced concern about in Stadler—the potential for unlimited liability and the absence of clear standards to logically curtail liability. See Stadler, 295 N.W.2d at 554. While a credible argument can be made that a parent's distress upon seeing his or her child injured is not necessarily abated by distance, it cannot be denied that a person who is in the zone of danger and fears for his or her own safety experiences a palpable and immediate distress that is not always shared by those more geographically removed and protected.

Moreover, by permitting bystander recovery in cases where the plaintiff was in the zone of danger and reasonably feared for his or her own safety, we do not create a new cause of action. Instead, we merely expand the scope of damages recoverable in a NIED claim. See Bovsun, 473 N.Y.S.2d 357, 461 N.E.2d at 847, 850 (observing that the expansion of New York's zone of danger test to permit bystander recovery when a plaintiff is in the zone of danger does not create a new cause of action but merely enlarges the scope of recoverable damages). Our holding in this case simply recognizes the right of a plaintiff to whom the defendant owed and breached a duty of reasonable care to recover, as an element of damages, those damages attributable to his or her distress caused by fearing for the safety of another or witnessing the defendant's negligent injury of another.

In expanding the scope of recoverable damages, we agree with the limits adopted

---

4. We decline to adopt the impact test for bystander recovery because such a test would be at odds with our current NIED test. It would be illogical to permit recovery for distress caused by fearing for one's own safety so long as the plaintiff was in the zone of physical danger, even without a physical impact, yet permit recovery for distress caused by witnessing injury to another only if the plaintiff suffered a physical impact.

by the New York Court of Appeals. *See Bovsun,* 473 N.Y.S.2d 357, 461 N.E.2d at 848. Thus, we hold that in order for the plaintiff to recover for fear for another's safety or for witnessing negligent injury to another, the third-party victim must suffer either death or serious bodily injury. This requirement, like the other requirements of a NIED claim, authenticates the plaintiff's distress and ensures that liability is imposed only in cases where the distress is truly severe because of the gravity of the injury witnessed.

■ Further, we agree with other jurisdictions that have included in their zone of danger tests a requirement that the plaintiff be closely related to the third-party victim. *See, e.g., Keck,* 593 P.2d at 670; *Bovsun,* 473 N.Y.S.2d 357, 461 N.E.2d at 848. As with the serious injury requirement, this requirement further serves to authenticate the plaintiff's distress and to place limits on a negligent tortfeasor's liability. In keeping with our historic cautiousness in expanding the NIED tort, we decline in this case to define the precise contours of the "close relationship" requirement because the facts of this case do not require us to do so. The mother-child relationship—even under the most restrictive of definitions—would satisfy the requirement of a close relationship. By limiting our opinion to the facts before us, we allow the common law NIED tort to develop gradually.[5] *See Lake v. Wal–Mart Stores, Inc.,* 582 N.W.2d 231, 234 (Minn. 1998) (citing *Tuttle v. Buck,* 107 Minn. 145, 148–49, 119 N.W. 946, 947 (1909)).

We reverse the judgment against Engler and remand to the district court for further proceedings in accordance with this opinion.

Reversed and remanded.

ANDERSON, G. BARRY, Justice (concurring).

I concur in the narrowly drawn majority opinion permitting a claim to be made for the negligent infliction of emotional distress under the specific facts presented here.

I agree with the majority opinion that it makes sense to limit the class of NIED claimants, and I also agree that, under any definition of "close relationship" the mother/child bond at issue here would qualify for eligibility to bring an NIED claim, but I write separately because I would go further and specifically define the qualifying relationship necessary for such a claim in Minnesota.

In my view, the use of a "close relationship" test as set out in the majority opinion is a minimal, at best, limitation on NIED claims. Not only does the majority formulation present the specter of the sudden discovery of a "close relationship" between previously distant parties, it also invites inquiry into, and controversy about, relationships thought to be "close," e.g., a married couple experiencing conflict or sibling disputes of long-running duration. Surely there will be requests by defense counsel for a special interrogatory on the jury verdict form to address the question of whether the plaintiff had the requisite "close relationship" to qualify for recovery.

Instead, I would require that NIED claims be further limited to circumstances where the third-party victim is a spouse, parent, child, grandparent, grandchild, or sibling of the plaintiff.

While I acknowledge that there is some arbitrariness to specifically limiting the

---

**5.** On appeal, the parties in this case did not address the question of how a close relationship requirement should be defined. At a minimum, we would benefit from briefing on this important question before adopting a particular definition.

class of claimants as described here, these are universally recognized relationships, and, if we discover, over time, that expansion of the class is appropriate, some future court can address a new boundary line to be drawn around the class. Although the "close relationship" test proposed in the majority opinion is in line with many other jurisdictions permitting NIED claims, some jurisdictions have recognized the risk of broadly defined eligibility and have limited the class of NIED victims. *See Barnhill v. Davis,* 300 N.W.2d 104, 108 (Iowa 1981); *Gates v. Richardson,* 719 P.2d 193, 198–99 (Wyo. 1986).

Given the cautious approach that Minnesota has used in the development of the negligent infliction of emotional distress tort, I think it far better.to define the class of potential claimants plainly and clearly because, as set out in *Stadler,* limits on liability must be imposed that are "workable, reasonable, logical and just." *Stadler v. Cross,* 295 N.W.2d 552, 554 (Minn.1980).